# Richmond.

## FIELDING v. ROBERTSON.

### January 15, 1925.

1. SALES—*Action by Seller—Verdict in Favor of Seller Held Supported by the Evidence—Case at Bar.*—In the instant case plaintiff sold defendant a carload of cottonseed meal for "November shipment." The car was shipped November 22nd, but not delivered until December 27th or 28th. Defendant declined to accept the seed when delivered. On November 27th, defendant wrote to plaintiff complaining of delay in delivery and plainly intimated that he would not pay for the meal unless delivered in November, and on December 13th wrote plaintiff "as you have not delivered the cottonseed I am canceling my order for one car which I have sold and parties refused to take." Defendant claimed that there was a shortage but plaintiff never heard of any shortage until defendant's grounds of defense was filed, nearly a year after the delivery, when it was too late to make good the shortage or make a claim against the carrier. Defendant nowhere testified that he was willing to accept the car and it seemed plain from the evidence that defendant declined because of the fall in the market, but based his claim on the ground that his contract called for November delivery instead of November shipment.

   *Held:* That a verdict for plaintiff was neither without evidence to support it, nor plainly contrary to the evidence.

2. SALES—*Quantity of Goods Shipped—Bill of Lading as Evidence.*—In an action by seller against buyer for refusal to accept and pay for goods sold, the buyer contended that only twenty-seven tons of the goods were shipped, whereas the contract called for thirty tons. The bill of lading called for thirty tons.

   *Held:* That the bill of lading was *prima facie* evidence that the carrier received the quantity called for by it, and in the instant case there was no evidence to the contrary.

3. SALES—*Quantity—Tender of More or Less.*—Where a contract of sale of cottonseed meal was for one carload of thirty tons the seller was bound to tender or deliver the exact quantity called for, neither more nor less.

4. SALES—*Quantity—Loss in Transit.*—Where the exact quantity called for has been shipped by the seller, and no time for delivery is fixed, and the quantity shipped has been diminished in transit, without the

knowledge or fault of the seller, and the deficiency is not discovered
by the buyer until after the goods have been received, and he is not
willing to accept less than the whole quantity purchased, he should
notify the seller and give him a reasonable opportunity to make good
the deficiency, if the time of delivery has not elapsed. He has no
right flatly to refuse to accept the shipment because of the deficiency
thus occasioned.

5. SALES—*Quantity—Deficiency—Case at Bar.*—In the instant case, an
action by seller against buyer, the buyer claimed that there was a
deficiency in the quantity of goods delivered; but it did not appear
that an opportunity was afforded the seller to make good the defici-
ency, and he was in no default in not making good a deficiency of
which he had no knowledge, and of which he received no information
from the buyer until nearly a year after the arrival of the goods.

6. SALES—*Quantity—Deficiency—Evidence Warranting Jury in Finding no*
*Deficiency.*—The action of a buyer in refusing to accept the goods
sold because the quantity was only twenty-seven tons, whereas the
contract called for thirty tons, in subsequently purchasing and pay-
ing for the identical carload of goods as containing thirty tons,
would have warranted the jury in finding that there was no such
deficiency as claimed by the buyer.

7. SALES—*Buyer's Refusal to Accept Delivery—Refusal to Accept on One*
*Ground as Waiver of Other Grounds.*—While as a general rule the re-
fusal of a tender on one ground is a waiver of objection to tender on
all other grounds, yet where a buyer declined to receive the goods
sold on the ground of delay in delivery, he is not cut off from the de-
fense of a deficiency in quantity when he could not have known of
such deficiency at the time of his repudiation of the contract on the
ground of delay.

8. SALES—*Repudiation of Contract by Buyer—Refusal of Seller to Accept*
*Renunciation of Contract—Contract Kept Alive as for Both Parties—*
*Case at Bar.*—In the instant case the buyer repudiated the contract
of sale but the seller did not accept his renunciation. The seller in
thus keeping the contract alive in his favor also kept it alive against
himself. The buyer had a *locus penitentiae* as long as a contract
remained open, but the buyer did not avail himself of it. He made
no complaint and gave no notice of any deficiency in quantity until
after suit was brought on the contract and nearly a year after the
tender which he declined. The objection, therefore, came too late,
and he was estopped from setting up that defense.

9. APPEAL AND ERROR—*Error in Instructions where no other verdict could*
*have been Found.*—Where the jury could not properly have found
any other verdict than the one found, it is immaterial whether the
rulings on the instructions were right or wrong.

10. SALES—*Action by Seller against Buyer for Refusal to Accept Goods—Evi-*
*dence—Harmless Error.*—In an action by seller against buyer for re-

fusal to accept goods sold, the depot agent at the place of delivery stated that the buyer gave no reason for refusal to accept the goods. He was then asked by counsel for buyer "did he give you any reasons after?" Upon objection by seller the answer was excluded and the buyer excepted. Witness would have answered: "He said the car did not arrive in time; his customers would not take the feed."

*Held:* That there was no error in this ruling as it was immaterial what buyer said afterwards and if, in any event, there was error in excluding the answer, it was harmless.

11. SALES—*Action by Seller against Buyer—Evidence.*—In an action by seller against buyer for refusal to accept and pay for the goods sold, the trial court refused to permit buyer to answer the following question: "If that meal had come up to representations in all respects, and you had information that there was the shortage that there turned out to be in that car, would you have refused for that reason?" He would have answered: "Why, certainly, I would."

*Held:* That as the attitude of the buyer in the matter had been fully explained, and was well understood, his answer could not have affected the result, and hence was immaterial and it was not error to exclude it.

12. SALES—*Action by Seller against Buyer—Evidence—Compromise Offered.*— In an action by a seller against buyer for refusal to accept and pay for the goods sold, it was alleged that the court erred in forcing the buyer to answer a question upon recross-examination. "Didn't you tell him that if he would take off $300.00 you would take the shipment?" The answer was: "As a compromise." The trial court told the jury that the evidence was admitted, not for the purpose of showing that the parties undertook to effect a compromise, but for the purpose of contradicting the testimony of the buyer, as to his reasons for refusing to accept the shipment.

*Held:* That in view of the explanation given by the court, the jury could not have been misled by the form of the question. Although it would have been better for the counsel to have adhered to the form of the question as first propounded and not answered, viz.: The question I am asking you specifically, isn't the only offer you made to him, was if he would take off $300.00 you would take it?

13. APPEAL AND ERROR—*Assignment of Error—Assignment should be Specific.*—In the instant case it was assigned as error that the trial court erred in forcing the defendant to answer a question upon recross-examination. The question and answer were then set out. An examination of the record showed six examinations of the witness in chief and four cross-examinations. In the last of these cross-examinations the question in controversy appears. A mere reference to the page of the record would have saved much searching of the record and labor that ought not to be imposed on the Supreme Court of Appeals, that court said: "Leisure is not one of the perquisites

of the judges of this court. It would probably be good ground for ignoring the assignment of error, but as the same question arises on assignment No. 8, it will be considered along with that assignment."

14. SALES—*Action by Seller against Buyer—Witnesses—Cross-Examination as to Whole Conversation.*—Where in an action by a seller against the buyer for failure to accept and pay for the goods sold, the buyer first introduced the subject of a conversation with the seller and gave his account of what was said, it was proper on cross-examination to require the witness to give the whole of the conversation.

15. SALES—*Action by Seller against Buyer—Evidence—Witnesses—Impeachment—Case at Bar.*—In the instant case, an action by seller against buyer for refusal to accept and pay for the goods sold, the buyer had testified to several reasons why he had refused to accept the goods, among them: Refusal of seller to give "me the excess freight back." He also testified that he went to see seller about the goods and that one C. was present; that the excess freight was discussed and that C. "heard it all." C. testified that the only proposition that he heard the buyer make to seller was that if the seller would take off $300.00 he would accept the goods. The testimony of C. was not to show an unaccepted offer of compromise, but to show that, in that interview, the subject of excess freight was not mentioned, and thereby to contradict the statement of the buyer. This the trial court explained to the jury.

*Held:* No error.

16. APPEAL AND ERROR—*Affirmance where there has been a Fair Trial.*—Where the parties have had a fair trial on the merits, and substantial justice has been reached, the judgment of the trial court must be affirmed.

Error to a judgment of the Circuit Court of Fauquier county, in an action of assumpsit. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Walter H. Robertson* and *Grimsley & Miller*, for the plaintiff in error.

*Robert A. Hutchison*, for the defendant in error.

BURKS, J., delivered the opinion of the court.

This was an action of assumpsit brought by Robertson against Fielding to recover damages for failure and refusal to accept and pay for cottonseed meal sold him by Robertson. There was a verdict and judgment for the plaintiff for $833.31.

The first assignment of error is that the verdict is contrary to the law and the evidence. The main controversy, under this assignment, is over the proper answer to the question, did Robertson do all that was required of him in fulfillment of his part of the contract?

There is very little, if any, conflict in the evidence. The parties had dealt with each other before. Fielding was a retail dealer in cottonseed meal and other articles of merchandise, and Robertson was a jobber. Fielding knew when he contracted with Robertson that the latter was not a manufacturer of cottonseed meal, and that he would have to buy from others in order to fulfill his contract. There were two contracts between Robertson and Fielding. One dated July 19, 1920, for one carload of cottonseed meal for November *delivery.* The other dated July 26, 1920, for a carload for November *shipment.* The contract for November *delivery* was fulfilled to the satisfaction of both parties and there is no controversy about it. The controversy is over the other car.

On July 26, 1920, a contract was entered into between the parties, evidenced by a written memorandum signed by both of them, as follows: "Sold to L. F. Fielding one carload, thirty tons, 43 per cent. cottonseed meal at $74.00 per ton delivered Bealeton, Virginia, subject to an increase in freight rates and delays beyond our control, for November shipment." There is no controversy over the quality of the meal, the price, or the amount of the increased freight. The

controversy is over the shipment and delivery of the quantity of meal sold.

The order for the shipment of both carloads was given in a letter from Fielding to Robertson dated November 9, 1920, in which he says: "I want one car to go to Midland and the other to Bealeton. You will make at least fifteen days between the two cars as I cannot handle two cars at once, because I have my money tied up in wheat." Robertson ordered the meal from W. S. Hoge & Brother, Washington, D. C., on November 11, 1920, and it was shipped from Leonard, Texas, November 22, 1920. The bill of lading "called for thirty tons, six hundred bags." The car did not arrive at Bealeton until December 18, 1920, and when it did "the doors were not sealed and in throwing the car in one of the doors was broken open and a sack of seed fell out." The car was not finally delivered until December 27th or 28th.

On November 27, 1920, Fielding wrote to Robertson complaining of delay in delivery of the car and plainly intimating that he would not pay for the meal unless delivered in November. He also claims to have made a like complaint a number of other times, but of this Robertson had no recollection. At all events, the contract did not call for November delivery, but November shipment. On December 13, Fielding wrote Robertson: "As you have not delivered the cottonseed I am cancelling my order for one car which I have sold and parties refuse to take." It does not appear that Robertson answered this letter, but when the car arrived five days later (December 18), Fielding promptly declined to accept it, the railroad agent, testifying on his behalf, says, assigning no reason; but afterwards stating that "he said the car did not arrive in time; his customers would not take the feed." Robertson

had drawn a draft on Fielding for the proper amount,
but he declined to pay it or accept the car.   Thereupon
Robertson wrote him on December 21, urging and
insisting upon his standing up to his contract, but he
still refused to do so.*   Fielding was examined and
cross-examined at length as to his reasons for refusing
to accept the shipment, and never in any way with-
drew his renunciation of December 13.   On the con-
trary, he testified that as soon as he received notifi-
cation of the arrival of the car he refused it, and that
the alleged shortage thereafter discovered had nothing
to do with his refusal, that he had made up his mind
before the car came that he was not going to accept it
and had so written Robertson.

---

*"Dear Sir.   Are advised by the agent that you have refused car
cottonseed meal shipped in car C. B. & Q. No. 100795, which was in your
contract No. 9, dated 7–26–1920, which we had shipped you.   ·

"Now, Mr. Fielding, we dislike to have trouble, but if you will not take
this meal we will have to dispose of it the best way we can, and sue you for
the difference in price of what we sell the meal for and the price we sold it
to you.   There is no question but what we can make you pay the difference,
but it is a disagreeable matter and we would much rather settle in a friendly
way.   We have offered to help you out by lifting the draft and taking your
note for thirty or sixty days and it seems to us that you would much rather
stick to your contracts like a man than try to break them and in the long
run have to pay any way, besides having it publicly known that you do not
carry out your contracts.   You know just as well as I do that it does not
pay for one to make contracts and then not live up to them.   We have done
everything to carry out our part of the contract, and it is up to you to re-
ceive the meal.   You cannot get away from the contract by refusing the
meal, as we will proceed against you at once for the difference between the
price we get for the meal and what we sold it to you, so you will be no better   ·
off in the long run, besides the humiliation of being sued seems to me would
make it preferable for you to receive the meal.

"If we do not hear from you promptly we will dispose of the meal to the
best advantage possible and proceed against you.   I would advise that you
consult a good attorney before making the mistake of refusing the meal.
My contract with you calls for shipment during November, which has been
done and because of this delay in transit, this does not justify you to refuse
the meal, as our contract specifically states that we are not responsible for
'delays beyond our control.'   You have accepted one car on contract with
us, which was delayed in transit, and this certainly makes plain that you
recognize your contract with us.   Also you positively stated before Mr.
Cobb and myself that you had no intention of breaking your contract and
agreed to accept the meal.   This statement was made in my office on Thurs-
day, December 16th.

"We hope to hear from you promptly."

About December 27th or 28th, Hoge & Brother, the vendors of Robertson, sold the identical carload of meal to Fielding at $50.00 a ton. Fielding and his son testified that upon unloading the car there was found to be a shortage of nearly three tons. But he paid Hoge & Brother for full thirty tons, and never at any time notified Robertson of any shortage. Robertson had other meal on hand from which he could readily and promptly have made good the shortage if he had been notified thereof, but he never heard of any shortage until the second set of grounds of defense were filed in this cause, nearly a year after the delivery of the car, when it was too late to make good the shortage, if it existed, or to make any claim against the carrier therefor.

Fielding claimed the right to inspect the car to ascertain its condition and to determine whether or not the meal contained forty-three percent cottonseed, but the railroad agent refused the right to inspect until the draft was paid. Robertson was not far off and was in telephone communication with Fielding, but the latter made no request of Robertson for the right to inspect, and after the meal was actually received by Fielding there is not an intimation in the record that the meal did not prove to be forty-three percent cottonseed. The failure to allow inspection, however, is not relied on in any of the assignments of error, and hence cannot be considered by this court.

Counsel for Fielding seek to base a withdrawal of his renunciation of December 13th from the concluding paragraph of Robertson's letter to him of December 21st, copied in the margin, but a careful examination of the testimony of Fielding fails to disclose anywhere the slightest claim of any such withdrawal by him, and when the car arrived he again promptly reiterated his

refusal to accept.  Fielding nowhere testifies that he was willing or offered to accept the car from December 13th till the close of the transaction.  It seems plain from the evidence as a whole that Fielding declined because of the fall in the market, but he based his claim on the ground that his contract called for November *delivery* instead of November *shipment*, which claim was abandoned in the petition for the writ of error.

[1] We have not stated the case, as upon a demurrer to the evidence, because that seemed unnecessary. But upon the case as stated it cannot be said that the verdict of the jury was either without evidence to support it, or plainly contrary to the evidence.

The argument of counsel, both oral and on the briefs, took a wide range, but the foregoing statement of facts indicates that the rights of the parties can be determined by the application of well established principles.

[2] It was argued that only twenty-seven tons were shipped as only that quantity was received, that the purchaser was not bound to receive less than the quantity purchased, and that it was too late to supply the deficiency as November had passed, and if supplied it would not comply with the contract for November shipment.  Fielding's own witness testified that the bill of lading called for "thirty tons, sixty bags."  The bill of lading was *prima facie* evidence that the carrier received the quantity called for by it, and there was no evidence to the contrary.  *Dir. Gen'l.* v. *Chandler*, 129 Va. 418, 106 S. E. 226.  Upon the record, therefore, thirty tons were shipped.

[3, 6] Upon the facts stated, it is well settled that the seller was bound to tender or deliver the exact quantity called for, neither more nor less.  *Norrington* v. *Wright*, 115 U. S. 188, 6 S. Ct. 12, 29 L. Ed. 366; *Johnson* v. *Hoffman*, 130 Va. 335, 107 S. E. 645.  But where the

exact quantity called for has been shipped by the seller, and no time for delivery is fixed, and the quantity shipped has been diminished in transit, without the knowledge or fault of the seller, and the deficiency is not discovered by the buyer until after the goods have been received, and he is not willing to accept less than the whole quantity purchased, he should notify the seller and give him a reasonable opportunity to make good the deficiency, if the time of delivery has not elapsed. He has no right flatly to refuse to accept the shipment because of the deficiency thus occasioned. In the instant case, this opportunity was not afforded the seller (Robertson) and he was in no default in not making good a deficiency of which he had no knowledge, and of which he received no information from the seller until nearly a year after the arrival of the goods. Moreover, the action of Fielding in subsequently purchasing and paying for the identical car as containing thirty tons would have warranted the jury in finding that there was no deficiency, and hence, on a demurrer to the evidence, we must so decide.

[7] Fielding declined to receive the meal on the ground of delay in delivery, and it is argued by counsel for Robertson that this was a waiver of all other grounds of defense. Perhaps some of the cases do go so far as to say that if a tender is rejected on one ground it is a waiver of all other objections not mentioned, but this could only mean a waiver of all other objections which could have been made but were not, for it is silence on these subjects only that could have led Robertson to believe that nothing further was required on his part. Fielding could not have known of the deficiency at the time of his repudiation of the contract and hence was not cut off from that defense, if it actually existed, at the time for the fulfillment of the contract. This is a

distinct exception to the general rule that the refusal
of a tender on one ground is a waiver of objection to the
tender on all other grounds.   *Kalamazoo Corset Co.* v.
*Simon* (C. C.) 129 Fed. 144, affirmed 129 Fed. 1005,
64 C. C. A. 166; *List & Son Co.* v. *Chase*, 80 Ohio St.
42, 88 N. E. 120, 17 Ann. Cas. 61 and note.

[8] On behalf of Fielding it was insisted that as
Robertson did not accept his renunciation of the con-
tract, he had the right to withdraw it and leave the
contract in force according to the terms.   Undoubtedly,
when Robertson kept the contract alive in his favor
he also kept it alive against himself.   *Norfolk Hosiery
Co.* v. *Aetna, etc., Co.*, 124 Va. 221, 98 S. E. 43.   Field-
ing had a *locus penitentiae* as long as the contract re-
mained open, but we have been unable to ascertain
that he ever availed himself of it.   Even when the car
arrived, he declined to accept it because he had made
up his mind he was not going to take it before it came,
and he had so written Robertson.   Thirty tons had
been ordered by Robertson, thirty tons had been
shipped, and the car was tendered to Fielding as thirty
tons, and was subsequently purchased by Fielding of
Hoge & Brother as thirty tons.   He made no complaint,
and gave no notice of any deficiency until after suit
brought on the contract and nearly a year after the
tender.   The objection comes too late.   He is estopped
from setting up that defense.

[9] There are several assignments of error to the
rulings of the trial court in granting and refusing in-
structions.   But as we are of opinion that the jury
could not properly have found any other verdict than
the one found, it is immaterial whether the rulings on
the instructions were right or wrong.   *Standard, etc.,
Co.* v. *Monroe*, 125 Va. 442, 447, 99 S. E. 589, and cases
cited.

[10] While the depot agent at Bealeton was being examined as a witness for Fielding he stated that when the car arrived Fielding gave no reason for refusing to accept it. He was then asked by counsel for Fielding: "Did he give you any reasons after?" Upon objection by the plaintiff the answer was excluded and Fielding excepted. He would have answered: "He said the car did not arrive in time; his customers would not take the feed." There was no error in this ruling, as it was immaterial what he said afterwards. In any event, if there was any error in excluding the answer it was harmless. In our statement of facts we have given him the benefit of the answer as if it had been admitted in evidence.

[11] The fifth assignment of error was to the refusal of the trial court to permit Fielding to answer the following question propounded to him by his counsel: "Mr. Fielding, if that meal had come up to representations in all respects and you had information that there was the shortage that there turned out to be in that car, would you have refused for that reason?" He would have answered: "Why, certainly I would."

His attitude in the matter had been fully explained and was well understood, and his answer could not have affected the result and hence was immaterial. It was not error to exclude the answer.

[12, 13] The sixth and eighth assignments of error cover practically the same question and will be considered together. The sixth assignment of error was as follows:

"The trial court erred in forcing Fielding to answer a question upon recross-examination by counsel for Robertson, which question was as follows:

"Q. Didn't you tell him that if he would take off $300.00 you would take the shipment?"

The answer was: "As a compromise."

Fielding was bandied back and forth between counsel until he was examined in chief by his own counsel four times and cross-examined by opposing counsel three times and then discharged. Nowhere in the course of these examinations does the question referred to appear. In looking further into the record, however, we find that later on in the trial Fielding was recalled to the stand again by his counsel and twice more examined in chief and once more cross-examined by counsel for Robertson, thus making six examinations in chief and four cross-examinations. In the last of those cross-examinations the question in controversy appears. A mere reference to the page of the record would have saved much searching of the record, and labor that ought not to be imposed on this court. Leisure is not one of the perquisites of the judges of this court. It would probably be good ground for ignoring the assignment of error, but as the same question arises on assignment No. 8 it will be considered along with that assignment. When the objection to the question was overruled, the trial court said to the jury: "The evidence is admitted not for the purpose of showing that the parties undertook to effect a compromise of their differences, but it is competent for the purpose of contradicting the testimony of the defendant, as to his reasons for refusing to accept the shipment. And the jury are now instructed that the evidence is to be considered by them solely for this latter purpose."

The object of the question asked Fielding was to lay the foundation for his impeachment. This appears from the questions immediately preceding and following the question objected to. This part of his examination was as follows:

"Q. The question I am asking you specifically, isn't

the only offer you made to him, was if he would take off $300.00 you would take it?

"Objection by Mr. Miller.

"Objection overruled.

"No answer to above question.

"Q. Didn't you tell him that if he would take off $300.00 you would take the shipment?

"A. As a compromise.

"Q. And you insist then, that you did mention excess freight?

"A. I did.

"Q. Was this $300.00 to cover excess freight?

"A. Wasn't anything said about it.

"Q. Nothing about excess freight?

"A. Not in the compromise.

"Q. Was anything said in that conversation about excess freight?

"A. Yes, sir; before that.

"Q. You mean upon a previous occasion?

"A. The same day.

"Q. Mr. Cobb heard it all?

"A. Yes, sir."

It would have been better if counsel had adhered to the form of the question first propounded which was not answered, but in view of the explanation given by the court at the time we do not think the jury could have been misled by the form of the question.

[14] Fielding had first introduced the subject of the conversation with Robertson and given his account of what was said, and it was proper on the cross-examination to require the witness to give the whole of that conversation. As said in *Lawson* v. *Hobbs*, 120 Va. 690, 696, 91 S. E. 750, 752: "The question was perfectly legitimate on cross-examination both to show the entire transaction, a part of which had been introduced

in the interest of the plaintiff in error, as well as the motive which might possibly have influenced the plaintiff in error in repudiating his contract."

[15] The eighth assignment of error is: "The trial court erred in permitting counsel for plaintiff in error, over objection of counsel for defendant in error, to ask a witness, Cobb, upon his direct examination about the proposition of compromise that Fielding made. The witness answered that the only proposition was that he heard Fielding say to Robertson, if Robertson would take off $300.00 he would take the car of meal." Cobb's testimony on this subject and the ruling of the court thereon at the time were as follows:

"Q. Do you recall Mr. Fielding, the defendant in this case, coming to Mr. Robertson's place of business and talking about this meal?

"A. Yes, sir.

"Q. At that time did Mr. Fielding assign any reason, or part of reason why he did not take that car, because Mr. Robertson would not take off the excess freight?

"A. I have no recollection of hearing anything said about excess freight.

"Q. You have no recollection of it?

"A. No, sir.

"Q. You don't recall his asking him to take it off?

"A. No, sir.

"Q. Will you state what was the only proposition or all of the propositions you heard Mr. Fielding make?

"A. The only proposition was that if he, Mr. Robertson, would take off $300.00 he would take the car of meal. Deduct $300.00 from the amount of the car.

"Objection by Mr. Miller.

"Objection overruled.

"Exception noted.

"The court: This evidence is introduced only for

the purpose of contradiction, and his reason assigned for refusing the car."

Fielding had testified to several reasons why he had refused to accept the car, and among them "because in the first car he gave me the excess freight back, and the second he did not." He also testified that he went to see Robertson about the car and that Robertson's man Cobb was present, that the excess freight was discussed at the time and that "Mr. Cobb heard it all." Now the object of the testimony of Cobb as well as of the question put to Fielding was not to show an unaccepted offer of compromise, but to show that, in that interview, the subject of excess freight was not mentioned, and thereby to contradict the statement of Fielding. The trial court so understood it, and then and there explained to the jury for what purpose and to what extent the evidence was admissible. In view of the instruction of the court, the jury could not have been misled by the reception of this testimony.

We do not think the trial court committed any error in admitting the testimony referred to in assignments of error six and eight.

[16] The parties have had a fair trial on the merits and substantial justice has been reached, and the judgment of the trial court must, therefore, be affirmed. Code, section 6331; *Rinehart & Dennis* v. *Brown*, 137 Va. 670, 120 S. E. 269.

*Affirmed.*