Richard MARCHESSAULT, Plaintiff-Appellee,

v.

NATIONAL GRANGE MUTUAL LIABILITY COMPANY, Defendant-Appellant.

No. 125, Docket 23744.

United States Court of Appeals Second Circuit.

Argued Dec. 8, 1955.

Decided Jan. 20, 1956.

Christopher A. Webber and Bartley J. Costello, Rutland, Vt., for appellant.

Lisman & Lisman, Burlington, Vt., for appellee.

Before SWAN, FRANK and LUMBARD, Circuit Judges.

SWAN, Circuit Judge.

This is an action on an automobile liability insurance policy issued by the defendant. Federal jurisdiction rests on diversity of citizenship. On January 1, 1954 the plaintiff was involved in an automobile accident by reason of which he incurred liability to a person injured in the accident. In the present action on the policy defendant denied liability on the ground that it had effectively cancelled the policy, pursuant to its terms, on November 23, 1953. Contending that its defense had been conclusively established, the defendant moved for a directed verdict and, after an adverse verdict by the jury, for judgment *non obstante veredicto*. These motions were denied. The sole question presented by the appeal is the correctness of the trial court's ruling on these motions.

The facts developed at the trial are substantially undisputed. The policy was issued by the defendant in February 1953. It gave the plaintiff coverage for one year, unless previously canceled, against liability in the amount of $5,000 for each injured person and $10,000 for each accident. The policy was obtained through Allen Agency, Inc., which paid the yearly premium to defendant and arranged with plaintiff for reimbursement in instalments. Three employees of the Allen Agency were licensed by the state of Vermont to act as brokers in procuring insurance but neither the Allen Agency nor any of its employees was authorized by defendant to act as its agent. In September 1953 Allen Agency requested defendant to increase the limits of liability in plaintiff's policy to $10,000 for each injured person and $20,000 for each accident. Defendant granted the increase effective October 1, 1953, sent an endorsement to Allen Agency and notified it that the premium therefor was $3.32. This premium was not paid. By letter dated October 13, 1953 Allen Agency notified plaintiff of the increase in liability limits and stated that the premium of $3.32 must be paid by October 20th.[1] Plaintiff ignored this letter. He testified at the trial that he had not instructed Allen Agency to apply for increased liability and did not wish it. On November 13, 1953 defendant mailed plaintiff a notice that his policy would be cancelled at 12:01 A.M. November 23. This notice is set out in the margin.[2] Plaintiff paid no attention to it. On January 4, 1954 defendant sent Allen Agency a check for $17.36 representing the unearned premium on the cancelled policy. Allen Agency credited this sum to plaintiff's account and thereafter was paid by plaintiff the balance owing to it. In the meantime on January 1, 1954, as already stated, occurred the accident which gave rise to the present action. The provisions of the policy as to cancellation are shown in the footnote.[3]

---

1. The notice also stated: "Premiums due when policies take effect. If insurance is not desired, the policy should be returned to our office at once. Holding the contract in your possession will be considered your acceptance of it." Allen Agency had not sent the endorsement to plaintiff.

2. "Notice of Cancellation
    For Insured R. Marchessault
    Date November 13, 1953
National Grange Mutual Liability Co.
National Grange Fire Insurance Co.
    Keene, New Hampshire
    Hereby gives you written notice in accordance with the policy conditions of the cancelation of its Policy No. 846–532
By virtue of this notice, as issued to you, the Policy will be canceled and all liability of the National Grange Mutual Liability Co.—National Grange Fire Insurance Co. under said Policy will cease at and from 12:01 A. M. November 23, 1953, without further notice. If the premium has been paid, the excess of such paid premium above the earned pro rata premium, if not tendered to you herewith, will be refunded on demand. If the premium has not been paid, a bill for the premium earned to the time of cancelation will be forwarded in due course. This action is occasioned by reason of non-payment of premium 2.99.
    Please return the Policy.
    Very truly yours,
    National Grange Mutual Liability Co.
    National Grange Fire Insurance Co.
    By Roy H. McCray
Name of Insured
    Richard Marchessault
    445 St. Paul Street
    Burlington, Vermont
    Copy: Mortgagee ...................
    Your policy can be put in force again only by 'Notice of Reinstatement' from a Branch or the Home Office."
The premium mentioned therein, $2.99, is less by 33 cents then the premium demanded in the October 13th letter of Allen Agency, the difference being the commission to which Allen Agency would be entitled if the premium had been paid to defendant.

3. "22 Cancellation. This policy may be canceled by the named insured by mailing to the company written notice stating when thereafter such cancelation shall be effective. This policy may be canceled by the company by mailing to the named insured at the address shown in this policy written notice stating when not less than five days thereafter such

■ In support of the trial court's ruling on defendant's motions, plaintiff argues that he understood the cancellation notice to relate only to the additional coverage of increase in liability limits, and that the jury, in response to a special interrogatory, found that this was a reasonable interpretation of the notice.[4] We think this finding unsupportable. The notice refers to the policy by number and unequivocally states that "all liability" under said policy will be cancelled on November 23rd. The statement that the reason for cancellation is non-payment of the premium for additional coverage creates no ambiguity as to what action was being taken. No "reasonable prudent man" could read the notice and not realize that *all* liability under the policy was to be cancelled. By the terms of the policy, cancellation could be effected by the unilateral act of the insurer in mailing a notice to the insured's address. Some cases have held that whether the insured received the notice is immaterial.[5] Under these authorities the insured's misunderstanding of a notice received would seem equally immaterial, provided the notice itself satisfied the requirements

of the cancellation provisions. But however that may be, in the case at bar the notice was plainly sufficient and a verdict to the contrary is unsupportable.

■ The plaintiff next contends that the policy was not effectively cancelled because of defendant's failure to return the unearned premium as soon as practicable after cancellation becomes effective. In the absence of a statute on the subject, and no such Vermont statute has been called to our attention, the parties were at liberty to determine by contract the conditions upon which cancellation might be had. Cases involving cancellation provisions identical or similar to those of the policy here in suit are almost unanimous in holding that return of the unearned premium is neither a condition precedent nor a condition subsequent to effective cancellation, and that the insurer's obligation to return the premium is only a contractual duty arising in consequence of the cancellation.[6] Federal jurisdiction in the case at bar rests on diversity; hence we must apply local law. As there is no local decision, we may assume that Vermont law accords with the general principles of the

cancelation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date of cancelation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the named insured or by the company shall be equivalent to mailing.

If the named insured cancels, earned premiums shall be computed in accordance with the customary short rate table and procedure. If the company cancels, earned premiums shall be computed pro rata. Premium adjustment may be made at the time cancelation is effected and, if not then made, shall be made as soon as practicable after cancelation becomes effective. The company's check or the check of its representative mailed or delivered as aforesaid shall be a sufficient tender of any refund of premium due to the named insured."

4. The jury answered "yes" to the following interrogatory:
"Would a reasonable prudent man upon receiving the notice of cancellation worded as shown by defendant's Exhibit C, under the circumstances disclosed by the

evidence in this case, have believed, as the plaintiff here claims he believed, that the cancellation merely affected the additional coverage."

5. Genone v. Citizens Ins. Co., 207 Ga. 83, 60 S.E.2d 125; American Fire & Casualty Co. v. Combs, Ky., 273 S.W.2d 37.

6. In addition to cases in the preceding footnote, see Summers v. Travelers Ins. Co., 8 Cir., 109 F.2d 845, 127 A.L.R. 1336; Gibbons v. Kelly, 156 Ohio St. 163, 101 N.E.2d 497; Wallace v. State Farm Mutual Automobile Ins. Co., 187 Tenn. 692, 216 S.W.2d 697; Medford v. Pacific Nat. Fire Ins. Co., 189 Or. 617, 219 P. 2d 142, 222 P.2d 407, 16 A.L.R.2d 1181; Department of Labor & Industries v. Northwestern Mut. Fire Ass'n, 13 Wash. 2d 288, 124 P.2d 944; and annotation in 16 A.L.R.2d 1200, 1204.
As supporting the view that return of the premium is a condition precedent to cancelation, see Ellzey v. Hardware Mut. Ins. Co., La.App., 40 So.2d 24; Crotts v. Fletcher Motor Co., 219 S.C. 204, 64 S.E.2d 540; Elmore v. Middlesex Mut. F. Ins. Co., 219 S.C. 520, 65 S.E.2d 871.

law of Contracts as applied in the cases above cited.[7]

■ In an opinion denying the defendant's motions Judge Gibson held that return of the unearned premium was not a condition precedent to cancellation, "which takes place upon notification by the company but that cancellation will continue only if the insurance company meets its obligation to return the unearned premiums as soon as practicable thereafter." In other words, he thought return of the premium a condition subsequent, non-performance of which would reinstate the policy. He also said that the defendant "has never yet returned" the premium to plaintiff because a return to Allen Agency was not a return to the plaintiff. We agree with the authorities which hold that return of the unearned premium is not a condition subsequent, non-performance of which terminates the cancellation. We also think that the premium was returned to the plaintiff. It is true that the jury in response to a special interrogatory found that the Allen Agency was "acting as an agent for the defendant." We think there was no evidence to support this finding. The employees of Allen Agency were licensed under Section 9166, Vermont Statutes 1947, to act as brokers and as such would be regarded as the agent of the insured. Bardwell v. Commercial Union Assur. Co., 105 Vt. 106, 114, 163 A. 633. But even if regarded as the defendant's agent in receiving the returned premium Allen Agency accounted for it to plaintiff, and he accepted credit for it on his indebtedness to Allen Agency. The plaintiff would be estopped from asserting that the premium had not been returned to him by the defendant.[8]

■ The plaintiff's final contention is that the cancellation of November 23rd was subsequently waived by defendant by the action of Allen Agency in sending plaintiff on January 8, 1954 a bill (Exhibit 8) which stated: "This insur-ance has been in full force since the date of the policies and as the account is now overdue remittance should be sent at once." As to this it will suffice to say (1) that the bill itself showed the refund of $17.36, (2) that the bill was presented by Allen Agency to obtain payment of a debt due to it, not one due to the defendant, and (3) that the notice of cancellation informed plaintiff: "Your policy can be put in force again only by 'Notice of Reinstatement' from a Branch or the Home Office."

It is unfortunate that plaintiff after receiving the cancellation notice took no steps to have the policy reinstated. One may sympathize with his plight but his rights cannot be judicially determined on the basis of sympathy. The policy was legally cancelled and there were no relevant issues of fact for submission to the jury. Accordingly denial of defendant's motions for a directed verdict and for judgment notwithstanding the jury's verdict should have been granted. The judgment for plaintiff is reversed with directions to enter judgment for defendant.

FRANK, Circuit Judge (dissenting).

In February 1953, plaintiff requested and received from defendant, through an insurance agency, a policy against liability in the amount of $5,000 for each injured person and $10,000 for each accident. Defendant received payment of the premium for this policy in the amount of $81.76.

In October, 1953, without any request by plaintiff, the defendant issued an endorsement providing additional coverage. This endorsement, sent to the agency, plaintiff did not receive, but the agency notified plaintiff of its issuance. The additional premium demanded of plaintiff for this increased coverage was $3.-22. Plaintiff, who did not want the increased coverage, ignored the bill for this additional amount. On November 13,

7. On the general subject of conditions subsequent see Corbin on Contracts § 739 et seq.

8. See Summers v. Travelers Ins. Co., 8 Cir., 109 F.2d 845, 848.

1953, defendant sent plaintiff a notice (defendant's Exhibit C), cancelling the entire policy. But this notice explicitly stated that the reason for the cancellation was "non-payment of premium $2.-99." This figure represented the premium for the increased coverage minus the commission to which the insurance agency would have been entitled if plaintiff had paid the additional premium of $3.22.

Plaintiff contended that he believed that the cancellation notice related solely to the additional coverage; that the $2.99 related to the premium therefor; and that, consequently, when he received that notice, he thought the original policy was still in effect, so that he did not attempt to obtain an insurance policy from another insurance company, as he could have done. As defendant did not, until after the accident, return the premium for the original policy which would have been unearned if the entire policy had been cancelled, the return of that unearned premium did not put plaintiff on notice, previous to the accident, of such cancellation.

The trial judge asked the jury to answer this question: "Would a reasonable prudent man upon receiving notice of cancellation worded as shown by defendant's Exhibit C, under the circumstances disclosed by the evidence in this case, have believed, as the plaintiff here claims he believed, that the cancellation merely affected the additional coverage?" The jury answered, yes.

I think that plaintiff, "an untutored layman," dealing with an experienced insurance company, could reasonably have had such a belief.[1] The jury could reasonably so find. I think my colleagues, in rejecting that finding, have improperly substituted themselves for the jury. See Cahill v. New York, N. H. & H. R. Co., 2 Cir., 224 F.2d 637, reversed 350 U.S. 898, 76 S.Ct. 180. The defendant, which misled plaintiff to his detriment, was estopped, I think, to assert that the original policy had been cancelled.[2] I would therefore affirm the judgment.

---

1. See, e. g., Allstate Insurance Co. v. Fannie Pacific, 2 Cir., 228 F.2d 199; Broidy v. State Mutual Life Assurance Co., 2 Cir., 186 F.2d 490; Gaunt v. John Hancock Mutual Life Insurance Co., 2 Cir., 160 F.2d 599.

2. Such is the rule in the case of parties to ordinary contracts. See, e. g., 3 Corbin, Contracts, pp. 941–942; Railway Co. v. McCarthy, 96 U.S. 258, 267–268, 24 L.Ed. 693; Griffin Grocery Co. v. Richardson, 8 Cir., 10 F.2d 467, 472–473; Fielding v. Robertson, 141 Va. 123, 133, 126 S.E. 231.

A fortiorari should it be true of an insurance company.