16689

RICE v. AMERICAN SECURITY INS. CO. *ET AL.*

(73 S. E. (2d) 683)

464

*Messrs. Cooper & Gary,* of Columbia, for *Appellants,*

*Messrs. J. W. Guest,* and *Harold C. Seigler,* of Columbia, *for Respondent,*

*Messrs. Cooper & Gary,* of Columbia, *for Appellants, in Reply,*

December 9, 1952.

STUKES, Justice.

Respondent, a near illiterate, purchased a new automobile from a Columbia dealer on April 15, 1950, and, to secure the credit portion of the purchase price, executed a conditional sales contract (chattel mortgage) in the amount of $1,684.56, which included $424.56 "differential for time payment," part of which was two-year insurance premium of $174.00. The indebtedness was payable in twenty-four monthly installments of $70.19, beginning May 15, 1950. Under date of April 17, 1950, respondent was informed by letter of Motor Investment Company, Columbia, by James Fulton, Manager, that it had purchased the conditional sales contract and instructed him to make payments at its Columbia office address or through the dealer who made the sale. Respondent was in arrears in his monthly payments from time to time but by December 2, 1950, he had made all payments through November—seven consecutive monthly installments in all. On December 21 the automobile was wrecked and a repairman testified that necessary repairs would cost $761.38.

On the day after the car was wrecked, and before respondent had reported it, a representative of the Investment Company, according to respondent's testimony, personally called on him to collect the December payment which was then slightly past due. Respondent testified that he told the representative about the wreck and the latter said, quoting, "your insurance ain't no good on your car * * *;" further that he did not know anything that could be done about it, that it "was one of those things."

Action was promptly brought by respondent against the Insurance Company on the policy which included collision damage and copy of which had been furnished him, but the Investment Company retained the original policy. It filed petition to intervene as the holder of the lien of the sales contract upon which the unpaid balance was, without interest, $1,193.23, and upon the provision of the policy, as follows: "Any loss hereunder is payable as interest may appear to the insured Motor Investment Company, Columbia, S. C." The petition to intervene contained the statement, quoting, "that if the said policy of insurance was in effect at the time of the alleged loss petitioner is entitled to have the proceeds of payment," etc. The petition was verified by James R. Fulton who described himself as Branch Manager of Motor Investment Company. The petitioner was made a defendant and its answer, verified by Fulton, contained the same equivocal claim to the effect that if the policy was in effect at the time of the loss, the Investment Company was entitled to the proceeds.

Answer of the Insurance Company, the original defendant in the action, set up claimed cancellation of the policy on September 22, 1950, whereby it was not in effect at the time of the loss. This answer was also verified by the same James Fulton, describing himself then as an agent of the defendant Insurance Company. The cancellation clause of the policy, in evidence, contained the following: "This policy may be cancelled by the company by mailing to the insured at the address shown in this policy written notice stating when not

less than five days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date and hour of cancellation stated in the notice shall become the end of the policy period. * * * If the company cancels, earned premiums shall be computed pro rata. Premium adjustment may be made at the time cancellation is effected and, if not then made, shall be made as soon as practicable after cancellation becomes effective. The company's check or the check of its representative mailed or delivered as aforesaid shall be a sufficient tender of any refund of premium due to the insured."

Under the facts which will be stated there was no effective cancellation for lack of refund of premium to the insured. *Crotts v. Fletcher Motor Co.,* 219 S. C. 204, 64 S. E. (2d) 540; *Elmore v. Middlesex Mutual Fire Ins. Co.,* 219 S. C. 520, 65 S. E. (2d) 871. There was no contention of cancellation by mutual agreement. *Cf. Dill v. Lumbermen's Mutual Ins. Co.,* 213 S. C. 593, 50 S. E. (2d) 923.

The evidence developed the remarkable fact that, on the printed form of the Insurance Company, Motor Investment Company, By *H. A. Mundy,* requested the cancellation of the policy as of Sept. 17, 1950, because the insured was a "bad insurance risk," and that credit of $136.60, unearned premium, be made by the Insurance Company to the account of the Investment Company, with inconsistent request on the same form that the Insurance Company forward check payable to the Investment Company and to respondent, the insured. Even more remarkable, in an envelope bearing the return name and address of Motor Investment Company, postmarked, *Columbia, S. C.,* Sept. 11, 1950, there was sent by registered mail to respondent letter dated, *Atlanta, Georgia,* Sept. 11, 1950, on the letterhead and signed with the name of the Insurance Company by *Herman A. Mundy,* Authorized Representative, to the effect that the policy would be cancelled as of September 17th and that the unearned pre-

mium *had been refunded* (see infra for subsequent date of "refund" check) to the Investment Company for the insured's account. Respondent testified, as did his wife, that this letter was received at his home by his wife but it was not given to him and that he did not receive the information or notice. Respondent's wife testified that she did not understand its contents. The testimony of both indicate that neither could have understood without assistance but that is of no importance because notice alone was clearly ineffective to cancel the insurance, as is established by the decisions which have been cited.

Produced in evidence from the file of the Investment Company was unused check of the Insurance Company dated, Atlanta, Ga., Sept. 18, 1950, for $136.60 payable to respondent and the Investment Company, which recited, in effect, that it was on account of the cancellation. The general manager of the Investment Company, Wilson Farrell, who was also an agent of the Insurance Company, testified that the check was held for disposition by respondent, but that it had not been offered or tendered to him and that the Investment Company made no effort to obtain other insurance to protect itself. When asked on cross examination if that was not "bad business", the witness replied that it was "calculated risk."

Motions for direction of verdict were made by all of the litigants which the court denied except that verdict was directed against the Insurance Company in an amount to be found by the jury and separate issue was submitted to them in the form of a question, as follows, "Did the Motor Investment Company waive their right to collect the insurance money under their chattel mortgage?" The question was answered in the affirmative by the jury, that the Investment Company had waived its right to the insurance, and the amount found was $1,100.00, less $50.00 deductible, total $1,050.00.

After verdict the defendants moved for judgment *non obstante veredicto* or for new trial, upon which the court

reduced the verdict in favor of plaintiff to the sum of $711.-38, the amount of the collision damage, less $50.00 deductible, according to the testimony of the repairman, which was the only evidence on the subject; and judgment *non obstante veredicto* was awarded plaintiff in that amount against the Insurance Company defendant. The order went further and held as follows: "It is the further judgment of this court that the defendant Motor Investment Company has waived its right to any payment under the insurance policy."

Plaintiff and defendants had made timely motions for direction of verdict on the specific issue of waiver of the insurance by the Investment Company, the former upon the ground that the only reasonable inference from the evidence was that waiver had been established as a matter of law, and the latter of course the opposite. Instead, the court submitted the issue to the jury, as has been seen, who by their special verdict found waiver. However, the court in the order on motion for judgment *non obstante* found as a matter of law that there was waiver, which finding is quoted above, and we agree that verdict thereabout for respondent should have been directed in the first place. where, however the facts and circumstances relating to the subject are admitted or clearly established, waiver becomes a question of law." 56 Am. Jur. 126, sec. 23.

The previously announced position of defendants' counsel that there was no jury issue on waiver doubtless influenced the court to add its conforming decision on motion *non obstante* to that of the jury. The record contains the interchange between counsel and court upon the motions for direction of verdict which were made at the conclusion of the evidence, a portion of which follows:

"Counsel for defendants: You may have noticed that we made a motion for a directed verdict on that question (waiver) and Mr. Seigler (counsel for plaintiff) made a motion, and both of us having (made) the motion for a directed verdict, it takes it away from the jury and leaves nothing for them. It is something for your Honor to decide and we

think the only thing left to go to the jury, if your Honor should decide the question of waiver, is the question of damages.

"The Court: * * *

"Counsel: That is true, but here we have a jury and we have asked your Honor to decide it as a matter of law and I think the law imposes on you the duty to decide it.

"The Court: You better not leave it to me. You better leave it to the jury. I believe I would decide against you. Somehow I don't believe it is a question for me. I will let the jury answer it."

The court finally did decide the issue, in the order for judgment, and against appellants' contentions. Emphasized above is the identity of agents of the two appellant companies. They were also represented at the trial and on appeal by identical counsel. The exceptions are joint and the first may be taken in itself to be waiver of the insurance by the Investment Company because it continues the contention of cancellation, the attempt at which was futile beyond question. This exception follows:

"1. The trial Court erred in directing a verdict for the plaintiff as against the defendant American Security Insurance Company upon the grounds that the uncontradicted testimony showed that the policy of insurance concerned was effectually cancelled by the mailing of notice to the plaintiff, and the forwarding of the return premium check to the defendant Motor Investment Company (mortgagee and loss payee under the policy) made payable to the plaintiff and the mortgagee jointly."

Waiver is frequently and most simply defined as the voluntary or intentional relinquishment of a known right. See the almost countless cases, including decisions from this court, in 44 Words and Phrases, page 516 et seq. That is quite easily applied to the undisputed facts of this case. The Investment Company voluntarily requested cancellation and credit of the unearned premium to its

account with the Insurance Company. An agent for both companies said on the witness stand, in effect, that thereby the Investment Company would take a calculated risk. It did, and lost by reason of the collision damage which shortly befell the automobile unless subsequent enforcement of its mortgage lien should satisfy its claim, as to the availability of which latter remedy we are not now called upon to decide. The testimony referred to is determinative of this controlling phase of the appeal. There was plain waiver of the insurance protection; the Investment Company requested cancellation of the policy, received and held the premium refund check, which bars its present, belated claim to the insurance. There could hardly be a clearer case of one's effort to have his cake and eat it, too. The Company's contrary contention amounts to this,—that the insurance which it voluntarily and knowingly relinquished having become valuable by the intervening collision damage, it would revoke its relinquishment, which is without logic or justice to commend it. There is not ever apt to be contest over waived rights except those which prove to be valuable.

The applicability of the law of waiver (concerning which there was no issuable fact for the jury) need not be further dwelt upon because of the positive wrong of the appellant Investment Company in attempting to procure the cancellation of the insurance, which brought about the necessity of this lawsuit with the resultant annoyance, expense and delay to respondent. The cancellation clause of the policy (and the mortgage) gave no right to the mortgagee, the Investment Company, to cancel. It secretly, so far as respondent was concerned, and wrongfully undertook to procure the cancellation; and did procure the issuance and delivery of check to it. True, the check was payable to it and respondent jointly but it held the check without even notice by it to respondent and continued for months thereafter to collect installments from him when it had his funds in its hands. Its motive and intention are not disclosed by the record; the witnesses did not explain further than has been stated and

they were agents of the Investment Company and the Insurance Company.

No cases were cited in the briefs which parallel the facts of this case, which is understandable because of their uniqueness. However, there are two Georgia decisions which are helpful. In *Atlas Auto Finance Co. v. Atkins,* 79 Ga. App. 91, 53 S. E. (2d) 171, the credit purchaser of an automobile suffered collision damage and when he went to the finance company for assistance in reporting and making claim to the insurance company, he was informed that there was no collision insurance. On the contrary, he had been assured by a representative at the time of financing that complete insurance coverage would be carried with an insurer of the finance company's choice, and the borrower paid $203.36 for insurance premium and finance charges upon a deferred balance of $450.00. The finance company brought an action to foreclose the mortgage to it and the court allowed, under the practice of that State, a plea of recoupment upon which verdict for the defendant was sustained. The other Georgia case is *Northwestern Fire & Marine Ins. Co. v. Waycross Building & Loan Ass'n,* 51 Ga. App. 857, 181 S. E. 509. There the mortgagee surrendered fire insurance policy without authority from the mortgagor and, upon almost immediate loss and after settlement by the insurer with the mortgagor in the apparent amount of his interest, the mortgagee was denied recovery against that insurer and relegated to its rights against another with which it had contracted without the insured's knowledge.

Unauthorized surrender by mortgagees and resulting cancellation of casualty insurance policies is treated in an annotation in 41 A. L. R. 1290 which is supplemented in 130 A. L. R. 604. From the review of numerous cases, the editor states at 41 A. L. R. 1290, the following: "The general rule is that the mortgagee of property is without authority to cancel, surrender for cancellation, or consent to cancellation of, a policy of insurance covering the property, without the consent of the owner, so as to defeat the right of the

latter to recover against the insurance company for a loss subsequently occurring."

In the case in hand, the mortgagee volunteered, without the knowledge of the mortgagor, to procure the cancellation of the insurance. That was manifestly more than a waiver of its right to the insurance; it was clearly an invasion of the rights of the mortgagor, to the latter's damage.

Appellants' second exception is that respondent should be held to be estopped to deny that the policy was cancelled because he did nothing after receipt of the notice of cancellation; but since refund of the unearned premium was not made or tendered to him pursuant to the policy provision for cancellation, the attempt was ineffectual and nothing was required of him under the facts in evidence. There appears to have been no consequent change of position by appellants which would give rise to an estoppel. This exception is not embraced in the "Questions involved" which were argued in the brief and may fairly be considered to have been abandoned; but that it is without merit is indicated by what has been said and by the text in 45 C. J. S., Insurance, § 452, page 100.

The foregoing conclusions render academic appellants' other points, including that with respect to the instructions to the jury on the issue of waiver, except that made by the sixth exception which complains of the admission in evidence of the testimony of respondent that, quoting, "a man from the Finance Company," unidentified by name, went to his home to collect the installment then just in arrears; was told about the collision damage of the day before and made statements relating to the insurance, which have been quoted. There was no objection to the testimony when elicited and there was cross-examination concerning it, of course without reservation of objection because there had been none. Moreover, the manager of the Investment Company testified that its representatives quite frequently called upon respondent and he did not know whether one had called on the day in question. In view of the

context of the testimony, which need not be stated, we think that timely objection would have been untenable, and it was not made.

It should be added that at the commencement of the trial the Investment Company moved to amend its answer to set up a cause of action against respondent for foreclosure of its mortgage, which was formally refused by the court and there was no appeal. Hence any question thereabouts is unaffected hereby.

The exceptions are overruled and the judgment affirmed.

BAKER, C. J., and FISHBURNE, TAYLOR and OXNER, JJ., concur.