17634

Richard P. McELMURRAY, Respondent, v. AMERICAN FIDELITY FIRE INSURANCE COMPANY, Appellant

(113 S. E. (2d) 528)

196

*Messrs. Turner, Padget & Graham*, of Columbia, *for Appellant,*

*Ryan L. Scott, Esq.,* of Columbia, *for Respondent,* █

*Messrs. Turner, Padget & Graham,* of Columbia, *for Appellant, in Reply,* █

April 1, 1960.

STUKES, Chief Justice.

This action was on an insurance policy issued by the appellant, American Fidelity Fire Insurance Company, to the respondent, Richard P. McElmurray, covering a 32-foot produce trailer, insuring against loss by upset or collision, among other hazards, in the amount of the actual cash value at the time of such collision subject to a $250.00 deductible provision. The respondent alleged that the trailer was completely wrecked and damaged in an accident on July 5, 1958, and demanded payment of $4,635.00 under the provisions of the policy, which was alleged to have been in effect on that date.

The appellant's answer admitted the issuance of the aforesaid policy but alleged that it had been duly cancelled on

May 7, 1958, in accordance with the policy provisions, and that the trailer was therefore not insured by the appellant at the time of the accident.

The evidence upon trial established the facts that the respondent and the balance of $6,273.44 was to be paid in contract on Novemer 26, 1956, from Fruehauf Trailer Company for $6,736.94, which sum was made up of a price of $4,635.00 for the trailer, $1,192.11 for the three year insurance policy referred to heretofore, and $909.83 finance charges. A down payment of $463.50 was made by the respondent had purchased the trailer on a conditional sales thirty-six monthly installments under the terms of the contract. Thereafter the aforesaid policy was issued to the respondent by the appellant with an effective date of November 26, 1956.

On April 22, 1958, respondent was given notice that the policy would be cancelled as of May 7, 1958. The notice of cancellation was mailed to respondent's address and receipted for there on April 25, 1958. After the notice was sent and prior to the accident, July 5, 1958, the respondent made two additional installment payments to Fruehauf, such payments being in the same amount, $160.00, as the payments made prior to cancellation. After the wreck no further payments were made by the respondent on the contract.

Respondent asserted that the policy had never been effectively cancelled because of appellant's failure to return the unearned premium to respondent personally. He further contended that even if there had been a cancellation, such had been waived by Fruehauf's acceptance as agent for appellant of the two additional unreduced payments on the contract, a portion of which he contended was insurance money. Apellant argued that under the peculiar provisions of the policy tender of the unearned premium to the respondent was not a condition of cancellation. Appellant further argued that no portion of the payments accepted after cancellation constituted insurance money because the insurance premium had

been prepaid in a lump sum by Fruehauf to the appellant at the inception of the contract. The trial judge overruled appellant's motions for nonsuit and directed verdict and submitted the case to the jury on the questions of waiver and the value of the trailer. The jury returned verdict for respondent of $3,500.00.

Appellant made timely motions for judgment notwithstanding the verdict or in the alternative for a new trial. These motions were denied and this appeal is from the denial of appellant's motions for nonsuit, directed verdict, judgment notwithstanding the verdict and new trial.

All of the foregoing is from the "Statement" in the record for appeal, which was "settled" by the trial judge and from which there was no appeal.

The conditional sales contract provided as follows with respect to insurance:

"2. Buyer covenants and agrees to the following: * * * (c) Buyer will procure, pay all premiums thereon, and deliver to Seller, an insurance policy or policies issued by a stock company satisfactory to Seller, with loss payable clause in form satisfactory to Seller, in an amount not less than the time balance hereunder, under which the goods shall be insured against loss or damage by collision, fire and theft thereof. Upon the failure of Buyer to procure and maintain such insurance and to keep all premiums paid thereon during the life of this agreement, Seller and its Assignees are hereby authorized (but not obligated) to procure such policy or policies, and pay all premiums thereon which shall not be paid when due. All amounts so paid by Seller shall become payable by Buyer to Seller hereunder and be paid with the installment next falling due hereunder. Failure of Buyer to provide such insurance or repay such sum or sums so paid by Seller as premiums on such policy or policies when due shall constitute a material breach of this agreement. The proceeds of any insurance, whether paid by reason of loss, damage, *returned premium* (emphasis added) or otherwise,

shall be applied toward the replacement of the goods or the payment of Buyer's obligations to Seller at the option of Seller or its assigns. Buyer hereby directs and authorizes any insurance company to make payment direct to Seller and appoints Seller as the attorney-in-fact of Buyer to endorse any and all drafts for such proceeds."

Fruehauf, by its insurance department or subsidiary, procured the policy from appellant with loss payable clause to it or assignee, but the policy was delivered to respondent.

The cancellation clause of the policy follows:

"This policy may be cancelled by the insured by surrender thereof to the company or any of its authorized agents or by mailing to the company written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by the company by mailing to the insured at the address shown in this policy written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of the surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the insured or by the company shall be equivalent to mailing. If the insured cancels, earned premium shall be computed in acordance with the customary short rate table and procedure. If the company cancels, earned premium shall be computed *pro rata*. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, *but payment or tender of unearned premium is not a condition of cancellation*." (Emphasis added.)

It is noted that cancellation by the company, the appellant, was not made dependent upon refund or tender of the unearned portion of the premium, which effectively distinguishes this case from our former decisions which will be cited. Appellant was granted leave to argue against them and seek reversal or modification of them. However, their sound-

ness need not, and will not, be re-examined because they involved different policy provisions from that quoted above which distinguish them from the case in hand, as has been said, but see annotation in 16 A. L. R. (2d) 1200 and supplements.

The former decisions referred to are: *Crotts v. Fletcher Motor Co.,* 219 S. C. 204, 64 S. E. (2d) 540; *Elmore v. Middlesex Mutual Fire Ins. Co.,* 219 S. C. 520, 65 S. E. (2d) 871, and *Rice v. American Security Ins. Co.,* 222 S. C. 463, 73 S. E. (2d) 683. In the *Crotts case* the policy provision for cancellation required that the unearned portion of the premium should be refunded to the insured; in fact, it was refunded to the chattel mortgagee; another distinction is that the mortgagee had no lien upon the premium refund, as here. Likewise in the *Elmore case* the policy provided, in effect, that upon cancellation by the insurer the unearned premium should be tendered or refunded to the insured. The evidence relating to tender was in conflict and the jury, by its verdict, found against the insurer. After its claimed attempt at tender of the premium, it was refunded to the local agent who credited it to the account of the insured. The policy provisions relating to cancellation in the *Rice case* were identical with the corresponding provisions in the *Elmore case,* and the authority of the latter was followed; there a premium refund check was issued which was payable to the insured and the chattel mortgagee and delivered to the latter, which held it in its files without notice to the insured; the *gravamen* of the decision was expressed in the following words of the opinion: "Since refund of the unearned premium was not made or tendered to him (the insured) pursuant to the policy provision for cancellation, the attempt (to cancel the policy) was ineffectual * * *."

The evidence in the case at bar leaves no doubt that there was compliance with the policy provision for cancellation which has been quoted (and there is no question as to the propriety of the form and content of it). The following is

copy of the notice thereof which was sent by registered mail to respondent:

Place: Detroit, Michigan

"American Fidelity
"Fire Insurance Company
"Richmond, Virginia

"Notice of Cancellation

Date: April 22, 1958

"American Fidelity Fire Insurance Company hereby gives you written notice in accordance with the Policy conditions of the Cancellation of its Automobile Policy No. AFF 07-103-7843 issued through its Charlotte, North Carolina Agency to RICHARD P. McELMURRAY

"By virtue of this notice, as issued to you, the Policy will be cancelled and all liability of American Fidelity Fire Insurance Company under said Policy will cease at and from 12:01 A. M., Standard Time, May 7th, 1958, without further notice.

"If the premium has been paid, the excess of paid premium above the *pro rata* premium for the expired term, if not tendered to you herein, will be refunded on demand.

"If the premium has not been paid, a bill for the premium earned to the time of Cancellation will be forwarded in due course.

"This Notice Is To:

Please return the policy and oblige.

"Mr. Richard P. McElmurray
"3300 Duncan Street
"Columbia, South Carolina

Yours very truly,
American Fidelity Fire
Insurance Company,
Richmond, Virginia

"Return Premium: $630.52

Agent.
By Frank M. O'Leary.    "

Also on April 22, 1958, the Charlotte Branch of Fruehauf wrote the following letter to respondent:

"Dear Mr. McElmurray:

"Our home office Insurance Department has just notified us that the insurance is being cancelled on the two Trailmobile produce vans you now have on contract with Fruehauf Trailer Company in Charlotte, N. C. These trailers Serial Numbers are 03149 and 91932-03371.

"It will, therefore, be necessary that you obtain proper insurance coverage with some other insurance firm at once. Please have your insurance agent send us a copy of the insurance policy showing a Loss Payable Clause in favor of Fruehauf Trailer Company.

"Also, I would like to call to your attention that the March payment on both of your contracts are past due. Please mail these payments today and protect your credit standing."

There was no payment or tender of the amount of the unearned premium to respondent, which was unnecessary under the terms of the policy; but it was promptly accounted for to Fruehauf and credited by it, in the amount of $630.52, on the indebtedness of respondent to Fruehauf. It was not so credited as to reduce the amounts of his monthly installments but so as to complete the payment of his indebtedness at an earlier date than under the original schedule—in other words, a less number of monthly installments would, on account of the credit, be necessary to liquidate the indebtedness. The payment to Fruehauf accorded with the sales contract, *supra*.

Unfortunately, respondent, according to his testimony, did not receive the notice of cancellation until after the loss but it was timely delivered by registered mail at his residence and receipted for by his housekeeper. Actual delivery was unnecessary in view of the policy provision, "the mailing of notice as aforesaid shall be sufficient proof of notice," and the trial court so charged the jury, without objection. 29 Am. Jur. (1960 ed.) Insurance, secs. 385, *et. seq.* Annotation, 64 A. L. R. (2d) 982.

The cancellation clause of the policy at hand, with reference to unearned premiums is unlike the corresponding clauses involved in our former decisions, *supra*, or in the cases reviewed in the cited A. L. R. annotations. Its presently important distinguishing feature is the concluding sentence of the clause, which surely leaves no doubt of the intent and meaning: "But payment or tender of unearned premium is not a condition of cancellation." The only decisions that involved similar provisions which have come to our attention (and they were found and cited by diligent counsel for appellant) are *Ampy v. Metropolitan Cas. Ins. Co. of New York,* 200 Va. 396, 105 S. E. (2d) 839, and *Johnson v. New Amsterdam Cas. Co.,* D. C. N. D. Fla., 162 F. Supp. 582. They resulted in judgments for the defendant insurers. Apparently they were not within the knowledge of the author of 29 Am. Jur. (1960 ed.), Insurance, sec. 394, a portion of which we quote from page 746:

"The most recent policy clause provides for cancellation by an insurer by mailing written notice to the named insured at the address shown in the policy stating when, not less than 5 days thereafter, such cancellation shall be effected, and provides further that if the insurer cancels, earned premiums shall be computed *pro rata,* and 'premium adjustment may be made at the time cancellation is effected, and if not then made shall be made as soon as practicable after cancellation becomes effective.' Under such clause it has been consistently held that a refund or tender of the unearned premium is not a condition precedent to effective cancellation."

It is elementary, and needs no citation of authority, that the function of courts is to adjudge the enforcement of contracts as they are written and entered into by the parties, if not contrary to law or public policy; the court cannot make them for the parties. It is equally elementary that ambiguities in insurance contracts will be construed against the insurers because they prepare them. But here there is no ambiguity—no room for construction. The policy

contract expressly negates necessity for return to the insured of the unearned premium in order to effect cancellation of the policy by the insurer. A debtor-creditor relationship arose upon cancellation, as has been said in many decisions of other courts. Moreover, here the premium accrued to Fruehauf under the terms of the conditional sales contract, to which reference has been made.

The trial court was of opinion that there was evidence of waiver of the cancellation by reason of the fact that respondent's monthly installments were not reduced in amount subsequent to the cancellation of the policy. The sales contract was credited, as said above, so as to reduce the number of installments which remained to be paid. In the statement of facts, *ante,* it is seen that the total three-year premium upon the policy was $1,192.11, which was prepaid by the Fruehauf Company to appellant; and it became a part of the total indebtedness to Fruehauf which was payable in thirty-six monthly installments. Respondent conceives, and convinced the lower court, that thereby each monthly installment contained a portion of the insurance premium, and that receipt by Fruehauf of monthly installments after the loss constituted waiver of the cancellation of the policy. We think that view is untenable because the whole premium had been prepaid at the beginning of the contract by Fruehauf to appellant, thereby becoming part of the indebtedness of respondent to Fruehauf. The monthly payments were required by respondent's obligation, to liquidate that indebtedness, and were in no part insurance premiums. The entire three-year insurance premium had been paid in advance by Fruehauf, as said, and none of the installment payments accrued to appellant or was paid to it. The trial court erred in holding that there was an issue of waiver. *Crotts v. Fletcher Motor Co., supra,* 219 S. C. 204, 217, 64 S. E. (2d) 540.

Respondent contends in argument that the policy was not cancelled by appellant but by an agent or employee of Fruehauf or its subsidiary finance com-

pany to which respondent's obligation had been assigned. However, the witness, O'Leary, testified on cross examination that he was authorized by appellant to, and did, act in behalf of appellant when he directed the cancellation of the policy because of the exceptionally high loss record of respondent. Tr. f 335. Moreover, if it had been unauthorized, appellant ratified the act and accounted for the unearned premium. The court instructed the jury, to which there was exception only by appellant, not respondent: "I charge you that as a matter of law the Fruehauf Trailer Company was an agent for this insurance company * * *." Tr. f. 600. In respondent's brief, f. 76, it is said: "The trial judge did not err in holding that as a matter of law Fruehauf Trailer Company was an agent of appellant." Under these circumstances, respondent cannot now be heard to deny that the policy was cancelled upon the authority of appellant.

Respondent has submited sustaining grounds: (1) that there was no refund of unearned premium to respondent who did not authorize the refund of it to Fruehauf to be credited upon respondent's indebtedness; and (2) that there was no cancellation by appellant but the attempt thereat was made by another, therefore there was no effective cancellation. These contentions are without merit for the reasons which have been stated. Refund was not necessary for cancellation under the terms of the policy, and Fruehauf had a lien upon any refund perforce the terms of the conditional sales contract; the cancellation was by one who, under the evidence, was then acting as the agent of appellant, which fact is asserted in respondent's brief, as has been pointed out, *ante*; and it was charged to the jury by the court as the law of the case, without objection by respondent, also *ante*.

Citing the *Rice case, supra,* 222 S. C. 463, 73 S. E. (2d) 683, respondent argues in his brief the question, "Can a mortgagee cancel an insurance policy without express authority", as raised by sustaining ground (2) above. The record does not support the fact implicit in the question. The witness O'Leary directed the cancellation after appellant had

called the attention of Fruehauf, his employer, to respondent's exceptionally high "loss ratio" under the policy. He testified that in such he acted as the agent of appellant. The Court instructed the jury that Fruehauf was appellant's agent and respondent reaffirms that in his brief, all of which is recounted above. Respondent cannot "change horses" on appeal and challenge Fruehauf's and its employee's, O'Leary's, authority from appellant to cancel the policy.

Any question as to who cancelled the policy, if otherwise present, is concluded by the stipulation which appears at folio 266 of the record:

"Mr. Scott: It is hereby stipulated by counsel for the plaintiff and defendant that a notice of cancellation *from American Fidelity Fire Insurance Company* of Richland (*sic*), Virginia, was received at the residence of Mr. Richard P. McElmurray, 3300 Duncan Street, Columbia, South Carolina. This is dated April 22, 1958, at Detroit, Michigan, and it pertains to a policy Nnmber-insurance Policy Number AFF07-103-7843. We can say it was received at Columbia, South Carolina, by the postal authorities, which endorsed their stamp with the date on April 25, 1958, at the Five Point Station." (Emphasis added.)

Refusal to direct verdict for appellant was error. The case is reversed and remanded for entry of judgment accordingly.

Reversed.

TAYLOR, OXNER, LEGGE and Moss, JJ., concur.