537 S.E.2d 553

AUTO NOW ACCEPTANCE CORPORATION, Respondent,

v.

CATAWBA INSURANCE COMPANY, Appellant.

No. 3241.

Court of Appeals of South Carolina.

Heard May 9, 2000.

Decided Sept. 11, 2000.

Rehearing Denied Nov. 11, 2000.

William P. Davis and Kirby D. Shealy, III, both of Baker, Revenel & Bender, of Columbia, for appellant.

J. Gregory Studemeyer, of Columbia, for respondent.

HEARN, Chief Judge:

Catawba Insurance Company appeals the trial judge's finding it was required to provide notice to Auto Now Acceptance Corporation of the cancellation of a policy it issued to Jacqueline Robinson and Michelle Jones. We affirm.

## FACTS/PROCEDURAL BACKGROUND

On April 14, 1995, Robinson and Jones (the purchasers) purchased a 1985 Maxima vehicle from Metro Auto Sales & Finance # 2 under an installment contract. The contract required the purchasers to maintain insurance on the car with the finance company, Auto Now, named as the loss payee under the policy.

In compliance with the contract, the purchasers obtained auto insurance from Catawba, naming Auto Now as the loss payee. In the loss payable clause of the insurance contract, Catawba stated, "We will give the same advance notice of cancellation to the loss payee as we give to the named insured shown in the Declarations." Auto Now never requested or received a copy of the insurance contract. They did, however, receive a "New Business Declaration" from Catawba which indicated Auto Now was the loss payee under the purchasers' policy.[1]

To pay for the insurance coverage, the purchasers contracted with Premium Budget, Inc. (PBI), a premium finance company. The PBI contract contained a provision in which the purchasers appointed PBI as their attorney-in-fact with the authority to cancel their insurance policy in the event they defaulted on their payments. The purchasers subsequently did default on those payments.

On October 16, 1995, PBI canceled the insurance policy pursuant to the appointment provision based on the purchasers' default. The parties stipulated PBI complied in every respect with the requirements for cancellation of an insurance policy by a premium service company as mandated in

---

1. The manager of Auto Now testified that Auto Now does not usually receive copies of the actual policy between an insurer and the purchaser, but rather relies on a declaration of insurance such as provided by Catawba in this case.

S.C.Code Ann. § 38–39–90 (Supp.1999). Catawba took no steps to notify Auto Now of the policy cancellation.

On or about December 19, 1995, a fire completely destroyed the Maxima. At the time it was worth approximately $3500.00. Auto Now sought reimbursement of its security interest from Catawba. Catawba refused to pay asserting the contract was not in effect at the time of the accident. It is at this point Auto Now learned of the policy's cancellation.

Auto Now subsequently brought this action alleging both the insurance policy and § 38–39–90(d) required Catawba to notify it of the policy cancellation. Catawba answered with the contention that no notice was required to a loss payee under the policy when it was canceled pursuant to a power of attorney from the insured. The trial judge held the policy provisions required Catawba to provide notice to Auto Now and ordered Catawba to pay Auto Now $3500.00 for reimbursement of its security interest in the Maxima. Catawba appeals.

## STANDARD OF REVIEW

In a non-jury action at law, the trial judge's findings of fact have the same force and effect as a jury verdict unless he or she committed some error of law leading to an erroneous conclusion or unless the evidence is reasonably susceptible of the opposite conclusion only. *Hiott v. Guaranty Nat'l Ins. Co.*, 329 S.C. 522, 529, 496 S.E.2d 417, 421 (Ct.App.1997); *see also Townes Assocs. v. City of Greenville*, 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976) ("In an action at law, on appeal of a case tried without a jury, the findings of fact of the judge will not be disturbed upon appeal unless found to be without evidence which reasonably supports the judge's findings."). However, where an action at law presents a question as to the construction of a written contract which is clear and unambiguous, the question is not one of fact but one of law. *United Dominion Realty Trust, Inc. v. Wal–Mart Stores, Inc.*, 307 S.C. 102, 105, 413 S.E.2d 866, 868 (Ct.App.1992). Moreover, the determination of legislative intent is a matter of law. *Charleston County Parks & Recreation Comm'n v. Somers*, 319 S.C. 65, 67, 459 S.E.2d 841, 843 (1995).

## DISCUSSION

Catawba argues its policy did not require notice to Auto Now of the policy cancellation. The crux of Catawba's argument is that PBI's cancellation of the policy pursuant to a power of attorney was tantamount to cancellation by the insured, the purchasers, and thus no notice was required by the terms of the policy, which promises the same notice to the loss payee as would be provided to the insured. Because the policy provides for notice to the insured only when the policy is canceled by the *insurer*, no notice would be required to a loss payee when the policy is canceled by the insured, or by its agent, a premium service company, via a power of attorney. We find the argument ignores the clear intent of the statute governing cancellation by premium service companies such as PBI.

■ As often stated, the cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature whenever possible. *Strother v. Lexington County Recreation Comm'n*, 332 S.C. 54, 62, 504 S.E.2d 117, 121 (1998). The statute in its entirety should be given a "practical, reasonable, and fair interpretation consonant with the purpose, design and policy of lawmakers." *Rosenbaum v. S–M–S 32*, 311 S.C. 140, 143, 427 S.E.2d 897, 898 (1993).

S.C.Code Ann. § 38–39–90 sets out in detail the manner in which a premium service company may cancel an insurance contract. Subsection (a) of that statute states that the insurance contract may not be canceled by a premium service company unless the cancellation is effectuated in accordance with the statute. Subsection (b) specifically requires the premium service company to deliver to the insured "at least ten days' written notice of its intent to cancel the insurance contract unless the default is cured within the ten-day period." PBI complied with this section and sent the purchasers a notice of intent to cancel insurance dated September 22, 1995. Catawba directs the court's attention to 25A S.C.Code Ann. Regs. 69–13(V)(B)(3) (1989) as support for its position. We do not find this regulation aids Catawba.

■ The regulation quoted and relied on by Catawba specifically references the notice of intent to request cancellation required by subsection (b). *See* 25A S.C.Code Ann. Regs. 69–

13(V)(B)(3) (1976). In recognition that the insured will already have received notice of the premium service company's intent to cancel, the regulation relieves the insurer from providing the insured with any further notice prior to carrying out the cancellation. Catawba argues that this language also relieves the insurer of the burden of notifying a mortgagee, or loss payee, of the policy cancellation. We do not believe the drafters of the regulation intended to affect the rights of a mortgagee to notice pursuant to a loss payable clause, nor do we believe the literal language of the regulation purports to do so.

The trial judge held that the cancellation by Catawba was carried out pursuant to subsection (2) of the cancellation provision of the policy which states that Catawba may cancel for any reason or condition for which cancellation is allowed by law, and not pursuant to subsection (1) which governs cancellation by the insured. Subsection (2) states that notice of such cancellation will be mailed to the insured at least fifteen days prior to the cancellation. Subsection (1) has no notice requirement for the obvious reason that the insured is initiating the cancellation and requires no notice of his or her own actions. The policy's loss payable clause promises the same advance notice of cancellation to the loss payee, or mortgagee, as would be given the insured. PBI canceled the policy due to the purchasers' nonpayment of the premium. Nonpayment of premiums is one of a narrow list of reasons an insurer may cancel a contract. See S.C.Code Ann. § 38–75–730 (1989 & Supp. 1999). If PBI had not been a party to this transaction, Catawba would have canceled the policy itself for nonpayment. In that case, there is no question but that Auto Now would be entitled to notice under the terms of the insurance contract at issue. Catawba seeks to alter this normal relationship between the insurer and the mortgagee because of an insurance regulation governing premium service companies, and the methods by which they may cancel insurance policies. We do not feel the General Assembly intended such a result. In fact, the plain language of § 38–39–90 indicates just the opposite.

Subsection (d) of § 38–39–90 supports the position that the rights of a mortgagee to notice pursuant to a loss payable clause in a contract of insurance are not affected by

the statutes or regulations governing premium service companies. It states:

> All statutory, regulatory, and *contractual* restrictions providing that the insurance contract may not be canceled unless notice is given to a governmental agency, *mortgagee,* or other third party apply where cancellation is effected under this section. The insurer shall give the prescribed notice in behalf of itself or the insured to any governmental agency, *mortgagee,* or other third party by the second business day after the day it receives the notice of cancellation from the premium service company . . .

(emphasis added). This provision unequivocally expresses the intent of the General Assembly that mortgagees' rights to notice under contracts of insurance were not to be compromised by laws governing premium service companies. Thus, in our view, the loss payable provision of the insurance policy is still very much viable. Additionally, the quoted statute *requires* an insurer such as Catawba to give notice to a mortgagee such as Auto Now on the second business day after it receives notice of intent to cancel from the premium service company. This statutory requirement of notice is independent of Catawba's obligation to provide notice to Auto Now under the loss payable clause of the insurance policy. Thus, even if the regulation relied on by Catawba required a finding that the cancellation in this case was "the equivalent of cancellation by the insured himself" and thus brought the cancellation within the purview of subsection (1) of the policy, the rights of Auto Now would remain unaffected because the General Assembly clearly intended otherwise. The statute and regulation above are intended to modify the relationship between insurer and insured to reflect the changed nature of that relationship vis-a-vis premium service companies. They were clearly not intended to negate any obligation of the insurer to a third party such as a mortgagee. While Catawba was relieved of the obligation to provide any notice to the purchasers under the policy, such notice having been provided by PBI, there was no concomitant relief of the obligation to notify Auto Now of the cancellation.

Accordingly, we affirm the trial judge's order requiring Catawba to pay $3500.00 to Auto Now.

**AFFIRMED.**

ANDERSON, J., concurs.

HUFF, J., dissents in a separate opinion.

HUFF, Judge:

I respectfully dissent. In my view, the circuit judge erred when he ruled that Catawba was required to provide notice of the cancellation of insurance to Auto Now.

Catawba argues the trial court erred in holding Catawba's policy required it to notify Auto Now of the policy's cancellation.

Section 38-39-90(d) provides,

All statutory, regulatory, and contractual restrictions providing that the insurance contract may not be canceled unless notice is given to a governmental agency, mortgagee, or other third party apply where cancellation is effected [by a premium service company]. The insurer shall give the prescribed notice in behalf of itself or the insured to any governmental agency, mortgagee, or other third party by the second business day after the day it receives the notice of cancellation from the premium service company and shall determine the effective date of cancellation taking into consideration the number of days' notice required to complete the cancellation.

No South Carolina statute or regulation expressly requires the insurance carrier to provide notice to the loss payee. Auto Now argues the South Carolina Supreme Court recognized the loss payee's right to receive notice of involuntary cancellation in *Rawl v. American Cent. Ins. Co.*, 94 S.C. 299, 77 S.E. 1013 (1913).

In *Rawl*, a fire insurance policy provided: " 'This policy shall be canceled at any time at the request of the insured, or by the company, by giving five days' notice of such cancellation.' " *Id.* at 299, 77 S.E. at 1013. The policy also provided, " 'if, with the consent of this company, an interest under this policy should exist in favor of a mortgagee, or any person or corporation having an interest in the subject of the insurance other than the interest of the insured as described herein, the conditions hereinbefore contained shall apply in the manner expressed in such provisions and conditions of insurance relat-

ing to such interest as shall be written upon, attached, or appended hereto.'" *Id.* The supreme court found the burden the insurer placed on itself to provide notice of cancellation was not expressly limited to the insured. Holding the policy must be strongly construed against the insurer, the court declared that under the policy stipulation, notice must be given to all persons who, by the terms of the policy, are interested in maintaining it in force. Accordingly, it ruled the loss payee was entitled to notice of cancellation. *Rawl.*

In *Rawl,* the loss payee's entitlement to notice was created by the policy's stipulation. We must look to the Catawba policy to determine whether Catawba similarly assumed the burden of providing the loss payee with notice.

The cardinal rule of contract interpretation is to ascertain and give effect to the intention of the parties and, in determining that intention, the court looks to the language of the contract. If the language is clear and unambiguous, the language alone determines the contract's force and effect. *United Dominion Realty Trust, Inc. v. Wal-Mart Stores, Inc.,* 307 S.C. 102, 413 S.E.2d 866 (Ct.App.1992). It is not the function of the courts to rewrite or torture the meaning of an insurance policy to extend coverage. *Gambrell v. Travelers Ins. Cos.,* 280 S.C. 69, 310 S.E.2d 814 (1983).

The Catawba policy contains a simple loss-payable clause rather than a standard clause. *See Nationwide Mut. Ins. Co. v. Hunt,* 327 S.C. 89, 92, 488 S.E.2d 339, 341 (1997) ("A loss-payable (or open mortgage) clause typically declares that the loss, if any, is payable to a mortgagee as its interest might appear."). Although a standard mortgagee clause creates an independent contract for the insurance of the mortgagee's interest, a loss payable clause merely identifies the mortgagee and the mortgagee stands in the insured's shoes. *Id.* at 93, 488 S.E.2d at 341.

Under the loss payable clause, Catawba is required to give the loss payee the same notice of cancellation as it gives to the named insured. The policy provides it may be canceled by two methods: (1) by the insured with written notice to Catawba or (2) by Catawba for "factors or conditions for which cancellation or deletion is allowed by law at the time the cancellation or deletion is to take effect" Under the second

provision, Catawba was to "mail to the named insured at the address shown in the policy at least 15 days before the date the cancellation or deletion is to take effect."

The trial court found the policy was canceled by operation of law pursuant to the second cancellation provision rather than by the insured. It held Catawba was required to provide the insured, and, thus, Auto Now, with notice of the cancellation.

An insurance company may cancel an insurance policy for a limited number of reasons, including nonpayment of the premium.[1] S.C.Code Ann. § 38–75730 (1989 & Supp.1999). When a company cancels a policy, it must give the named insured written notice of the cancellation. The notice must be given no later than ten days prior to the effective date for cancellation due to nonpayment of the premium and not less than thirty days prior to the effective date for cancellation for other reasons.

Regulation 69–13 provides a carrier does not have to provide an insured notice of cancellation when the policy has been canceled by a licensed premium service company for nonpayment of premiums pursuant to a power of attorney under section 38–39–90. 25A S.C.Code Ann. Regs. 69–13(A)(V)(B)(3) (1989). The regulation explains,

---

**1.** (a) No insurance policy or renewal thereof may be cancelled by the insurer prior to the expiration of the term stated in the policy, except for one of the following reasons:

(1) nonpayment of premium;

(2) material misrepresentation of fact which, if known to the company, would have caused the company not to issue the policy;

(3) substantial change in the risk assumed, except to the extent that the insurer should reasonably have foreseen the change or contemplated the risk in writing the policy;

(4) substantial breaches of contractual duties, conditions, or warranties; or

(5) loss of the insurer's reinsurance covering all or a significant portion of the particular policy insured, or where continuation of the policy would imperil the insurer's solvency or place that insurer in violation of the insurance laws of this State. Prior to cancellation for reasons permitted in this item (5), the insurer shall notify the director or his designee, in writing, at least sixty days prior to such cancellation and the director or his designee shall, within thirty days of such notification, approve or disapprove such action.

S.C.Code Ann. § 38–75–730 (1989 & Supp.1999).

In such a situation, the insured will have already been notified of the premium service company's intent to request cancellation, *such cancellation by the premium service company is deemed to be the equivalent of cancellation by the insured himself,* and the forms, methods and timing set forth in the premium service laws are declared to be the exclusive means of effecting cancellation of insurance contracts by premium service companies. See, S.C.Code § 38-39-90(b), (c) and (g) (1976), as amended.

*Id.* (emphasis added); *see also* S.C.Code Ann. § 38-39-90(c) (Supp.1999) ("The insurance contract must be canceled as if the notice of cancellation had been submitted by the insured himself, but without requiring the return of the insurance contract.").

PBI's cancellation of the policy on the Maxima was the equivalent of cancellation by Robinson and Jones. As Regulation 69-13 clearly provides, Catawba was not required to provide notice to the insured when the policy was canceled by PBI. Under the terms of the contract, Catawba was only compelled to provide the loss payee with the same notice it was required to provide the insured. We are constrained by the statutory, regulatory, and contractual provisions to hold Catawba was not required to provide notice of the cancellation to Auto Now.

Section 38-39-90(d) also requires a carrier to provide notice on behalf of the named insured. Although the Auto Now contract mandated that Robinson and Jones maintain insurance on the Maxima, it did not dictate that they provide it with notice if the insurance policy was canceled.

Accordingly, I would reverse the trial court's order requiring Catawba to pay $3,500.00 to Auto Now.