570 S.E.2d 168

**AUTO NOW ACCEPTANCE CORPORATION, Respondent,**

v.

**CATAWBA INSURANCE COMPANY, Petitioner.**

No. 25525.

Supreme Court of South Carolina.

Heard June 25, 2002.

Decided Sept. 3, 2002.

William P. Davis and Holly L. Palmer, both of Baker, Ravenel & Bender, of Columbia; for Petitioner.

Joseph Gregory Studemeyer, of Columbia; for Respondent.

JUSTICE BURNETT:

Auto Now Acceptance Corp. (Auto Now) brought this action against Catawba Insurance Co. (Catawba) for failing to provide it notice of cancellation of an insurance policy listing Auto Now as loss payee. A divided Court of Appeals affirmed the

trial judge's ruling in favor of Auto Now. *See Auto Now Acceptance Corp. v. Catawba Ins. Co.*, 342 S.C. 526, 537 S.E.2d 553 (Ct.App.2000). We reverse.

## FACTS

Catawba issued an automobile insurance policy to Jacqueline D. Robinson and Michelle Jones (Insured). Auto Now took assignment of the installment sales contract between Insured and the car dealership. Catawba listed Auto Now as loss payee on Insured's policy. Insured financed the insurance premium with Premium Budget, Inc. (PBI). Insured executed a power of attorney granting authority to PBI to cancel the insurance policy upon ten days' notice to Insured in the event of Insured's default in repayment of the premium.

Insured defaulted and PBI mailed Insured notice of its intent to cancel. Following an additional notice to Insured, PBI mailed notice of cancellation to Catawba.[1] Neither PBI, Insured, nor Catawba notified Auto Now of the cancellation. Fire destroyed Insured's automobile two months after PBI cancelled the insurance. Auto Now learned of the policy's cancellation only after Insured defaulted on the loan.

## ISSUES

I. Did the Court of Appeals err in finding Catawba was required to notify Auto Now of the cancellation of Insured's policy where the cancellation was effected by PBI?

II. Did the Court of Appeals err by failing to address the two types of loss payee clauses under South Carolina law?

## DISCUSSION

### I

### Failure to Notify a Loss Payee of Cancellation

Catawba argues the Court of Appeals erred in finding it owed a duty to inform Auto Now of the cancellation.

---

1. All parties stipulate PBI complied fully with the requirements governing insurance cancellations by premium finance companies.

Catawba contends it is neither contractually nor statutorily required to notify a loss payee of a cancellation initiated by a premium service company. We agree.

The contract of insurance issued to Insured by Catawba contemplates cancellation either by Insured or by Insurer, Catawba. If Catawba cancelled the policy, the contract requires it notify Insured at least 15 days before the effective date of cancellation. *See also* S.C. Code Ann. § 38-77-120(a) (Supp.2000) (requiring insurer to provide 15 days notice before canceling policy). This provision of the contract does not require notice to third parties. However, the contract's loss payable clause requires Catawba, when it cancels a policy, to provide the same 15-day notice of cancellation to a loss payee. If the insured cancels, no notice is required.

The trial court held the insurance cancellation by PBI was not the equivalent of cancellation by Insured. The court concluded the contract's notice provision to loss payees was triggered by PBI's cancellation. Therefore, Catawba was contractually required to notify Auto Now of the cancellation.

On appeal, Catawba argued PBI's cancellation, through its power of attorney granted by Insured, was the equivalent of cancellation by Insured. The Court of Appeals, affirming the trial court, found the argument ignores the clear intent of the statute governing cancellation by premium service companies such as PBI. *Auto Now Acceptance Corp.*, 342 S.C. at 530, 537 S.E.2d at 555. The Court of Appeals noted South Carolina limits the ability of PBI as a premium service company to cancel an insurance contract on behalf of Insured. *See, e.g.,* S.C. Code Ann. § 38-39-90 (Supp.2000).

Catawba argues 25A S.C. Code Ann. Reg. 69-13(V)(B)(3) (1976) provides cancellation by PBI is equivalent to cancellation by Insured. The regulation requires an insurer provide notice of cancellation to an insured before cancellation of a policy. *See* 25A S.C. Code Ann. Reg. 69-13(V)(A) (1976). Subsection (B)(3) provides an exception to this requirement when a premium service company cancels the policy because [i]n such a situation the insured will have already been notified of the premium service company's intent to request cancellation, such cancellation by the premium service company is

deemed the equivalent of cancellation by the insured himself. 25A S.C. Code Ann. Reg. 69-13(V)(B)(3) (1976).

Catawba contends this language requires we find the Legislature affirmatively recognizes PBI's cancellation as cancellation by Insured, relieving Catawba of notifying Auto Now of the cancellation. Catawba reads the clause too broadly.

The Court of Appeals correctly interpreted the regulation in light of the insurer's duty to notify an insured before cancelling a policy as required by S.C. Code Ann. § 38-39-90 and 25A S.C. Code Ann. Reg. 69-13(V)(B)(3). [T]he regulation relieves the insurer from providing the insured with any further notice prior to carrying out the cancellation, because the insured will already have received notice of the premium service company's intent to cancel. *Auto Now Acceptance Corp.*, 342 S.C. at 531, 537 S.E.2d at 556. The regulation does not statutorily recognize a premium service company as the equivalent of an insured. Instead, it relieves the insurer of the burden of notifying the insured of cancellation because the premium company is required to do so. Catawba's interpretation is not reasonable in the light of the regulation's purpose to ensure the insured's notification of cancellation. *See Strother v. Lexington County Recreation Comm'n*, 332 S.C. 54, 62, 504 S.E.2d 117, 121 (1998) (the cardinal rule of statutory construction is for a court to ascertain the intent of the legislature and to give it effect); *Rosenbaum v. S-M-S 32*, 311 S.C. 140, 143, 427 S.E.2d 897, 898 (1993) (a court should give a statute a practical, reasonable, and fair interpretation consonant with the purpose, design and policy of lawmakers.); *Mitchell v. Holler*, 311 S.C. 406, 410, 429 S.E.2d 793, 795 (1993) (The words of a statute must be given their plain and ordinary meaning without resorting to subtle or forced construction to limit or expand a statute's operation.).

The Court of Appeals' interpretation of the contract and statutes is equally erroneous. The Court of Appeals observes PBI cancelled the policy because Insured failed to pay premiums, which is one reason an insurer may cancel a policy. *See* S.C. Code Ann. § 38-75-730 (1989 & Supp. 2001). The Court of Appeals offers if PBI had not been a party to this transaction, Catawba would have canceled the policy itself for nonpayment ... [i]n that case, there is no question but that Auto Now

would be entitled to notice under the terms of the insurance contract at issue. *Auto Now Acceptance Corp.,* 342 at 531, 537 S.E.2d at 556.

In adopting the trial court's rationale, the Court of Appeals based its decision on a premise inconsistent with the facts of the case. The fact Catawba would have cancelled Insured's policy for non-payment of premiums is not pertinent to circumstances in which PBI paid Insured's policy premiums in-full to Catawba, and then required Insured to repay PBI under threat of cancellation of Insured's coverage. Assuming hypothetical facts is inconsistent with the provisions of the contract, which are silent as to Catawba's duty to inform loss payees when PBI cancels. *See Blakeley v. Rabon,* 266 S.C. 68, 72, 221 S.E.2d 767, 769 (1976) (Words cannot be read into a contract which impart intent wholly unexpressed when the contract was executed).

The Court of Appeals further and incorrectly affirmed the trial court by finding a statutory notice requirement independent of Catawba's contractual obligations. The court below based its decision on S.C. Code Ann. § 38-39-90(d) (1976) which provides:

> All *statutory, regulatory, and contractual restrictions* providing that the insurance contract may not be canceled unless notice is given to a governmental agency, mortgagee, or other third party apply where cancellation is effected under this section. The insurer shall give the prescribed notice in behalf of itself or the insured to any governmental agency, mortgagee, or other third party by the second business day after the day it receives the notice of cancellation from the premium service company and shall determine the effective date of cancellation taking into consideration the number of days' notice required to complete the cancellation.

S.C. Code Ann. § 38-39-90(d)(emphasis added).

The Court of Appeals interprets this statute as requiring Catawba give notice to Auto Now on the second business day after it receives notice of intent to cancel from PBI. We disagree.

Our statute is similar [2] to one reviewed by the Tennessee Court of Appeals in *Western Express, Inc. v. Interested Underwriters at Lloyd's of London,* 942 S.W.2d 542 (Tenn.Ct. App.1996). In *Western Express,* a premium service company paid a yearly premium to an insurer on behalf of an insured. The insurance contract listed the lien holder of the insured's truck as a loss payee. The Court of Appeals concluded: the quoted statute does not independently obligate the premium finance company or the insurer to give notice to lienholders ... [only] that other **statutes, regulations** or **contracts** that **do** impose such requirements should be complied with. *Id.* at 544 (emphasis in original). We concur.

The statute merely requires an insurer, before it may cancel a policy, to provide a notice of intent to cancel to third parties where it is affirmatively required to do so by statute, regulation or contract. Section 38-39-90(d) is not instructive of Catawba's duty to notify Auto Now when Insured or PBI cancels the policy, nor does it provide an independent statutory duty for Catawba to notify Auto Now of PBI's cancellation.

Auto Now advances two additional theories why Catawba had a duty to notify it of PBI's cancellation. The first is *Rawl v. American Cent. Ins. Co.,* 94 S.C. 299, 77 S.E. 1013 (1913), in which we recognized a loss payee's right to receive notice of involuntary cancellation. As the dissent below correctly noted, the loss payee's entitlement to notice in *Rawl* was created by the insurance policy itself, not by our interpretation of a statute or regulation. *See Auto Now Acceptance Corp.,* 342 S.C. at 533-34, 537 S.E.2d at 557-58 (Huff, J., dissenting). Therefore, while *Rawl* holds a contract may require an insurer to notify a loss payee of a cancelled policy, it does not mandate such notice as a matter of law.

---

**2.** The Tennessee statute provided:

All statutory, regulatory and contractual restrictions providing that the insurance contract may not be cancelled unless notice is given to a governmental agency, mortgagee or other third party shall apply for cancellations effected under the provisions of this section. The insurer shall give the prescribed notice on behalf of itself or the insured to any governmental agency, mortgagee or other third party on or before the second business day after the day it receives the notice of cancellation, taking into consideration the number of days' notice required to complete the cancellation.

Tenn. Code Ann. § 56-37-110(d).

Secondly, Auto Now contends public policy requires Catawba to forward PBI's notice of intent to cancel to it. Auto Now believes the burden placed on Catawba is warranted because requiring insurers to notify loss payees of involuntary cancellations of insurance ... facilitates the public policy of removing uninsured motorists from the highways of this State. We disagree.

Auto Now does not cite, nor have we found, any cases similar to the case *sub judice* in which a court found an insurer's duty to notify a loss payee of a third party's cancellation of an insured's contract based on those grounds. We believe a desire to remove uninsured vehicles from the state's roads, though laudable, cannot stand in the face of the explicit language of § 38-39-90(d).

Although we are sympathetic to the plight of loss payees in these circumstances, no contract or any statutory or regulatory provision requires an insurer notify a loss payee when a premium service company cancels an insurance policy. This Court recognizes PBI's capacity to cancel an automobile insurance policy when it acts through a power of attorney granted to it by Insured. *See Steele v. Seibels, Bruce and Co.,* 295 S.C. 206, 367 S.E.2d 695 (1988). Insured irrevocably appointed PBI as their true and lawful attorney-in-fact with full authority to cancel any or all policies listed ... in the event of any default in repayment as agreed. When PBI cancelled Insured's policy, it did so as an agent of Insured. PBI's cancellation, therefore, is the equivalent of Insured's cancellation, which relieves Catawba from notifying Auto Now.

## II

### Two Types of Loss Payee Clauses

■ Both Catawba and the dissent below assert the majority's decision overlooks the distinction between the two types of loss-payee clauses under South Carolina law. We disagree.

This Court in *Nationwide Mutual Insurance Co. v. Hunt,* 327 S.C. 89, 488 S.E.2d 339 (1997), recognized the existence of two types of third-party insurance clauses. They are: (1) loss payable clause which merely identifies the person who may collect the insurance proceeds; and (2) a standard mortgage

clause which creates an independent contract for mortgagee's interest. *Id.* at 93, 488 S.E.2d at 341; *see Auto Now Acceptance Corp.*, 342 S.C. at 534, 537 S.E.2d at 558.

Courts rely on the distinction between the two clauses when an **insurer** cancels a policy and the remaining question is whether the insurer had a duty to notify a third party, in the absence of a contractual obligation to do so. *See, e.g., Vargas v. Nautilus Ins. Co.*, 248 Kan. 881, 811 P.2d 868 (Kan.1991); *Gallant v. Lake States Mutual Ins. Co.*, 142 Mich.App. 183, 187, 369 N.W.2d 205, 205 (Mich.Ct.App.1985); *Old Kent Bank of Holland v. Chaddock, Winter & Alberts*, 197 Mich.App. 372, 495 N.W.2d 808 (Mich.Ct.App.1992). The distinction is irrelevant here because this case involves a premium service company, standing in the shoes of the insured, cancelling an insurance policy.

### CONCLUSION

For the above reasons we REVERSE the Court of Appeals.

TOAL, C.J., MOORE, WALLER and PLEICONES, JJ., concur.