616 S.E.2d 699

Bryan BOWMAN, Claimant,

v.

STATE ROOFING COMPANY, Chesterfield County School District, George Cantlon, Uninsured Employers' Fund, Travelers Insurance Co., AFCO Credit Corporation, and C. Douglas Wilson & Co. Inc.,

Of whom State Roofing Company and Uninsured Employers' Fund are Respondents,

and

Travelers Insurance Co. and AFCO Credit Corporation are, Appellants.

Danny Gainey, Claimant,

v.

State Roofing Company, Chesterfield County School District, George Cantlon, Uninsured Employers' Fund, Travelers Insurance Co., AFCO Credit Corporation, and C. Douglas Wilson & Co. Inc.,

Of whom State Roofing Company and Uninsured Employers' Fund are Respondents,

and

Travelers Insurance Co. and AFCO Credit Corporation are, Appellants.

No. 25996.

Supreme Court of South Carolina.

Heard Feb. 2, 2005.

Decided June 6, 2005.

Refiled July 18, 2005.

&#9919;1069

C. Mitchell Brown, Elizabeth Herlong Campbell, and Beth Burke Richardson, of Nelson Mullins Riley & Scarborough, L.L.P., of Columbia;  and Erroll Anne Y. Hodges, of Nelson Mullins Riley & Scarborough, L.L.P., of Greenville, for appellant AFCO Credit Corporation.

Byron P. Roberts, of Tally, Roberts & Blue, L.L.C., of Columbia, for appellant Travelers Insurance Co.

David C. Holler, of Lee, Erter, Wilson, James, Holler & Smith, L.L.C., of Sumter, for respondent Employer Company.

Ajerenal Danley and Matthew C. Robertson, of Danley Law Firm, P.C., of Columbia, for respondent Uninsured Employers' Fund.

Justice MOORE:

Claimants Bowman and Gainey commenced these workers' compensation claims alleging on-the-job injuries sustained on June 3 and September 15, 1998, while working for respondent State Roofing Company (Employer). Employer's workers' compensation insurance carrier, appellant Travelers Insurance Company (Carrier), denied coverage on both claims asserting Employer's policy had been cancelled effective before either claim arose. The two claims came before the single commissioner solely on the issue of coverage. The commissioner found the policy was not effectively cancelled and ordered Carrier to appear and defend the claims on behalf of Employer. The full Commission affirmed, as did the circuit court. We affirm as modified.

## FACTS

Employer purchased a workers' compensation insurance policy from Carrier with coverage for one year from November 8, 1997. On November 20, Employer signed a finance agreement with appellant/respondent AFCO Credit Corporation (Finance Company) whereby Finance Company agreed to finance the annual premium of $4,616 for Employer's workers' compensation insurance. In exchange, Employer agreed to repay Finance Company in nine monthly installments. Under this agreement, Finance Company was authorized to cancel the insurance policy if Employer did not comply with the terms of the finance agreement. On December 16, Finance Company paid the entire annual premium to Carrier.

Employer missed its first installment payment to Finance Company which was due January 8, 1998. On January 20, Finance Company mailed Employer a Notice of Intent advising that if the payment and a late charge were not received within ten days, the policy would be cancelled. On February 5, Finance Company issued a Notice of Cancellation (NOC) requesting that Carrier cancel the policy effective February 13. A copy of the NOC was sent to Employer.

Finance Company did not receive Employer's January installment until February 13 when the February installment was already due. Finance Company advised Employer that its account was still delinquent. Employer continued sending payments late and its account was not current until June 1998. On June 24, Finance Company sent to Carrier a Request for Reinstatement. After the June payment, Employer made no more payments to Finance Company. On July 20, Finance Company sent a second Notice of Intent followed by an NOC on August 6 requesting cancellation effective August 14.

It is undisputed that Carrier never refunded any unearned premium to either Finance Company or Employer.

## ISSUES

1. Does the capitulation agreement signed by Employer resolve the issue of coverage?
2. Does noncompliance with statutory requirements render the cancellation ineffective?

## DISCUSSION

### 1. Capitulation agreement

■ Appellants (Carrier and Finance Company) contend the Workers' Compensation Commission has no jurisdiction because Employer signed a capitulation agreement acknowledging non-compliance with workers' compensation insurance requirements from March 1998 to February 1999. This agreement was negotiated by the Commission's Director of Coverage and Compliance after the Commission received from Carrier a notice that Employer's coverage had been cancelled. The validity of the cancellation was not investigated for purposes of this agreement, however, and Employer remained adamant that it had coverage. According to testimony by the Director of Coverage and Compliance, the point of the agreement was an admission that Employer was unable to demonstrate compliance. After signing the agreement, Employer paid a fine for non-compliance with workers' compensation insurance requirements.

The agreement in question specifically states: "It is understood and agreed by signing this Agreement [Employer] does

not make any admissions or waive any claims or causes of action [Employer] may have against any third party, insurance company, agent or broker." Under the limited terms of this agreement, the commissioner properly found Employer did not waive its claim that Carrier's cancellation of the policy was invalid.

## 2. Cancellation of the policy

The cancellation of insurance by Finance Company is governed by S.C.Code Ann. § 38–39–90 (2002)[1] which provides:

**§ 38–39–90. Cancellation of insurance contracts by premium service company.**

(a) When a premium service agreement contains a power of attorney enabling the company to cancel any insurance contract listed in the agreement, the insurance contract may not be canceled by the premium service company unless the cancellation is effectuated in accordance with this section.

*(b) The premium service company shall deliver the insured at least ten days' written notice of its intent to cancel the insurance contract unless the default is cured within the ten-day period.*

*(c) Not less than five days after the expiration of the notice, the premium service company may thereafter request in the name of the insured cancellation of the insurance contract by delivering to the insurer a notice of cancellation. The insurance contract must be canceled as if the notice of cancellation had been submitted by the insured himself,* but without requiring the return of the insurance contract. The premium service company shall also deliver a notice of cancellation to the insured at his last address as set forth in its records by the date the notice of cancellation is delivered to the insurer. It is sufficient to give notice either by delivering it to the person or by depositing it in the United States mail, postage prepaid, addressed to the last address of the person. Notice delivered in accordance with the provisions of this statute shall be sufficient proof of delivery.

---

1. This section was subsequently amended.

(d) All statutory, regulatory, and contractual restrictions providing that the insurance contract may not be canceled unless notice is given to a governmental agency, mortgagee, or other third party apply where cancellation is effected under this section. The insurer shall give the prescribed notice in behalf of itself or the insured to any governmental agency, mortgagee, or other third party by the second business day after the day it receives the notice of cancellation from the premium service company and shall determine the effective date of cancellation taking into consideration the number of days' notice required to complete the cancellation.

(e) Whenever an insurance contract is canceled, the insurer *shall return whatever gross unearned premiums are due under the insurance contract to the premium service company which financed the premium for the account of the insured.* The gross unearned premiums due on personal lines insurance contracts financed by premium service companies must be computed on a pro rata basis.

(f) If the crediting of return premiums to the account of the insured results in a surplus over the amount due from the insured, the premium service company shall promptly refund the excess to the insured or the agent of record. No refund is required if it amounts to less than three dollars.

(g) Cancellations of insurance contracts by premium service companies must be effected exclusively by the forms, method, and timing set forth in this chapter.

(emphasis added).

The commissioner ruled that Carrier's cancellation was invalid under this section because (1) the notices of cancellation sent by Finance Company to Carrier requesting cancellation did not properly give ten days' notice to Employer; and (2) Carrier failed to refund unearned premiums with notice to Employer. Appellants contend this was error.

### a. Notices of Cancellation

The commissioner ruled that the both the February 5 and August 6 Notices of Cancellation (NOC) failed to give the required ten days' notice to Employer before cancellation.

The NOC mailed on February 5 indicated a cancellation date of February 13, less than ten days from the date of the NOC's mailing.[2] The commissioner also applied Regulation 69–10(22) and ruled that the ten-day notice period does not begin to run until the second business day following receipt of the NOC by Carrier; therefore cancellation could not have been effective until February 18. The commissioner concluded Finance Company's February 5 request for cancellation was therefore invalid. Similarly, the August 6 NOC indicated a cancellation date of August 14, less than ten days from the date of mailing. Again applying Regulation 69–10(19), the commissioner concluded cancellation could not be effective until August 19 and therefore the August 6 NOC was invalid.

Appellants contend the commissioner incorrectly calculated the ten-day period required by § 38–39–90. We agree.

The timeline under § 38–39–90 indicates the premium service company must first deliver [3] to the insured a Notice of Intent indicating its intent to cancel the insurance policy in ten days. § 38–39–90(b). Five days after this ten-day period expires, the premium service company may deliver an NOC to the insurance carrier requesting that the policy be cancelled. The premium service company must also send to the insured on the same date a copy of the NOC. § 38–39–90(c).

■ Under this statute, the ten-day notice to the insured is calculated from the date of mailing of the *Notice of Intent*, not the date of mailing the NOC as found by the commissioner. Cancellation may therefore be effected a total of fifteen days from the mailing of the Notice of Intent. *See Hiott v. Guar. Nat. Ins. Co.*, 329 S.C. 522, 496 S.E.2d 417 (Ct.App.1997) (under § 38–39–90, cancellation must be at least fifteen days from mailing notice of intent).

■ Applying this timeline to the facts here, the February 5 NOC properly gave notice to Employer that the policy cancellation could be effected as of February 13, which was more than fifteen days after the date of mailing the Notice of Intent on January 20. Similarly, the August 6 NOC properly

2. Under § 38–39–90(c), the date of delivery is the date of mailing.

3. As noted above, the date of delivery is the date of mailing under § 38–39–90(c).

gave notice that the policy could be cancelled as of August 14, which was more than fifteen days from the date the Notice of Intent was mailed on July 20. The commissioner erred in calculating the required ten days' notice by using the date the NOC was mailed rather than the date the Notice of Intent was mailed.

■ Further, the commissioner erred in applying Regulation 69–10(22) to add an additional two days to the cancellation date. This regulation provides:

> 22. Where a valid statutory, regulatory or contractual provision requires that notice be given a particular period of time before cancellation shall become effective, the insurer shall not be required to effect cancellation prior to the elapse of the period of time prescribed by such statute, regulation or contract; *the running of such time shall commence the second business day following receipt by the insurer of the request for cancellation.*

(emphasis added). This regulation tracks the requirement of § 38–39–90(d) which provides:

> (d) All statutory, regulatory, and contractual restrictions providing that the insurance contract may not be canceled unless notice is given to a governmental agency, mortgagee, or other *third party* apply where cancellation is effected under this section. *The insurer shall give the prescribed notice in behalf of itself or the insured to any governmental agency, mortgagee, or other third party by the **second business day** after the day it receives the notice of cancellation from the premium service company and shall determine the effective date of cancellation taking into consideration the number of days' notice required to complete the cancellation.*

(emphasis added).

Under the plain language of the statute, the additional two-day period calculated from the time the insurance carrier receives the NOC applies only in situations where a third-party, such as a lienholder, is entitled to notice. *E.g., Auto Now Acceptance Corp. v. Catawba Ins. Co.*, 351 S.C. 377, 570 S.E.2d 168 (2002) (before insurer may cancel a policy, it must provide notice of intent to cancel to third parties where it is affirmatively required to do so by statute, regulation or con-

tract). Since there is no third-party involved here, this provision does not apply.

We conclude the commissioner erred in ruling that the policy was not cancelled in compliance with the notice requirements of § 38–39–90.

### b. Failure to return unearned premium

■ As an alternative ground for finding the cancellation invalid, the commissioner ruled that Carrier's failure to refund unearned premiums to Finance Company with notice to Employer violated § 38–39–90.

■ Section 38–39–90(e) requires that "[w]henever an insurance contract is canceled, the insurer shall return whatever gross unearned premiums are due under the insurance contract to the premium service company which financed the premium for the account of the insured." [4] Under subsection (f), the premium service company must refund any surplus over three dollars [5] to the insured. By its terms, § 38–39–90 is the exclusive means for cancellation of an insurance contract by a premium service company. An insurance contract "may not be canceled by the premium service company unless the cancellation is effectuated in accordance with this section." § 38–39–90(a). Any violation of this section therefore invalidates cancellation. *South Carolina Ins. Co. v. Brown*, 280 S.C. 574, 313 S.E.2d 348 (Ct.App.1984).

Here, Carrier never refunded the unearned portion of the annual premium. Since Carrier did not comply with all the requirements of § 38–39–90, neither attempted cancellation was valid. *Accord Government Employees Ins. Co. v. Taylor*, 270 Md. 11, 310 A.2d 49 (1973).

■ The return of unearned premiums is not a mere "accounting matter" as appellants claim. We have held that where an insurance policy provides for the return of unearned premiums upon cancellation, the tender of a refund is a

---

4. In addition, Regulation 69–10(21) requires the return of unearned premiums within thirty days of cancellation and that a copy of the statement regarding the return to be sent to the insured.

5. This amount is now five dollars under the amended version of the statute.

condition precedent to an effective cancellation. *McElmurray v. American Fid. Fire Ins. Co.*, 236 S.C. 195, 113 S.E.2d 528 (1960). Here, the refund of unearned premiums is required by statute; all statutory provisions relating to insurance contracts become part of the insuring agreement. *Allstate Ins. Co. v. Thatcher*, 283 S.C. 585, 325 S.E.2d 59 (1985). A return of unearned premiums as required under § 38–39–90(e) is in effect part of Carrier's obligation under its policy and is therefore a condition precedent to an effective cancellation.

Appellants complain that requiring the return of unearned premiums to effectuate cancellation goes against the interest of Finance Company, the entity requesting cancellation, and therefore could not have been intended by the legislature. We disagree. Once Finance Company requested cancellation, it had the right to demand repayment of the unearned premium.[6] Further, subsection (f) requires the premium service company to credit any return of unearned premiums to the account of the insured and "promptly refund" any surplus over three dollars. This provision works to the benefit of the insured and is an added protection ensuring notice to the insured.

Because Carrier failed to meet the requirement of subsection (e) of § 38–39–90 that it refund unearned premiums, cancellation was invalid under subsection (a) of the statute.

## CONCLUSION

We need not address the commissioner's alternative ruling regarding waiver and estoppel. The judgment of the circuit court affirming the Commission's order is

**AFFIRMED AS MODIFIED.**

WALLER, BURNETT, and PLEICONES, JJ., concur.

TOAL, C.J., dissenting in a separate opinion.

Chief Justice TOAL dissenting:

I respectfully dissent because I disagree with the majority on the second issue. The majority affirms the commissioner's

---

6. Finance Company's notice of cancellation in fact includes a demand for return of the unearned premium.

123

ruling on the basis that the insurer failed to refund insured's unearned premiums according to S.C.Code Ann. § 38–39–90 (2002). I disagree.

Section 38–39–90(e) provides in part, the following:

Whenever an insurance contract is canceled, the insurer shall return whatever gross unearned premiums are due under the insurance contract to the premium service company which financed the premium for the account of the insured.

According to the plain meaning of this statute, in my opinion, an insurer's duty to refund unearned premiums is not a precondition for cancellation. Although the statute requires that a refund be tendered, the plain meaning of the statute requires the insurer to refund the unearned premiums after cancellation. In my opinion, therefore, the statute makes the insurer liable for unearned premiums. It does not, however, operate to invalidate the insurer's prior cancellation of coverage.

Accordingly, I would reverse and hold that insurer's cancellation of coverage was effective despite insurer's failure to tender the refund as required in S.C.Code Ann. § 38–39–90(e).

ORDER

Appellants Travelers Insurance Company and AFCO Credit Corporation have petitioned this Court for rehearing in this matter. We deny the petitions but withdraw our former opinion and substitute the attached opinion. The only change is as follows.

The opinion currently states:

Once Finance Company requested cancellation, it had the right to demand repayment of the unearned premium. *The fact that it did not do so in this case does not vitiate the requirements placed on Carrier under the statute.*

The underscored language is replaced by the addition of footnote 6 which reads as follows:

Finance Company's notice of cancellation in fact includes a demand for return of the unearned premium.

IT IS SO ORDERED.

s/ James E. Moore, J.
s/ John H. Waller, Jr., J.
s/ E.C. Burnett, III, J.
s/ Costa M. Pleicones, J.

While I agree with the change made to the opinion and the denial of the petition for rehearing filed by AFCO Credit Corporation, I would grant the petition for rehearing filed by Travelers Insurance Company.

s/ Jean H. Toal, C.J.